(48 South. 654.)

No. 17,358.

BOARD OF COM'RS FOR BAYOU TERRE AUX BŒUF DRAINAGE DIST. v. BAKER.

(Nov. 30, 1908. On Rehearing, March 1, 1909.)

1. DRAINS (§ 75*)—POWER TO ORDER AND DIRECT ELECTIONS—WHO HAS.

Under article 281 of the Constitution, as amended, the authority to determine whether the power to order and direct the conduct of the special drainage tax elections contemplated by the article shall be vested in the police juries or the boards of commissioners of drainage districts is left with the General Assembly.

[Ed. Note.—For other cases, see Drains, Cent. Dig. § 72; Dec. Dig. § 75.*]

2. DRAINS (§ 67*)—POWER TO ORDER AND DIRECT ELECTIONS—WHO HAS.

The power to order and direct the conduct of the special drainage tax elections, contemplated by article 281 of the Constitution, as amended, is vested by Act No. 114, p. 178, of 1900, in the police juries, and the provisions of that act upon that subject have not been repealed by Acts Nos. 145, 159, pp. 248, 293, of 1902, or No. 135, p. 225, of 1906.

[Ed. Note.—For other cases, see Drains, Cent. Dig. § 73; Dec. Dig. § 67.*]

3. DRAINS (§ 67*)—PROCEEDINGS FOR ESTABLISHMENT—VALIDATION.

The provision, in the amendment to article 281 of the Constitution proposed by Act No. 300, p. 450, of 1908, and adopted in November, 1908, validating "contributions and acreage taxes heretofore authorized by a vote of a majority, in number and amount, of the property tax payers, qualified to vote * * * in drainage districts," is a re-enactment of the provision contained in the amendment proposed by Act No. 122, p. 207, of 1906, and adopted in November, 1906. It finds no application in a case in which it appears that a majority in amount of the qualified electors referred to did not, and does not appear that a majority in number did, participate in the election.

[Ed. Note.—For other cases, see Drains, Cent. Dig. § 73; Dec. Dig. § 67.*]

4. DRAINS (§ 19*)—INDEBTEDNESS—RIGHT TO INCUR.

Article 281 of the Constitution authorizes drainage districts, upon the vote of the qualified taxpayers, to incur debt and issue bonds therefor, upon the basis of an ad valorem tax (to which all taxable property is liable), not exceeding 5 mills on the dollar, to the extent of one-tenth of the assessed value of the property in such districts, respectively. The article also authorizes such districts, on the same condition, to incur debt and issue bonds therefor, upon the basis of a specific tax on land, not exceeding 25 cents per acre, up to such amount as may be paid from the proceeds of the tax levied, the limit of time for which the taxes may be levied and during which the bonds may run being fixed in both cases at 40 years.

Held: A debt, which, by reason of excess in amount, cannot be incurred upon either of the bases thus provided, cannot be incurred upon the theory that the two bases may be combined for its support, so that the debtors of the ad valorem and of the specific taxes, respectively, will be bound, each class, for the whole; and a person who has agreed to buy bonds, to be issued by a board of commissioners of a drainage district, cannot be held to his agreement upon the basis of a tender of bonds predicated on such theory.

[Ed. Note.—For other cases, see Drains, Cent. Dig. § 13; Dec. Dig. § 19.*]

On Rehearing.

5. AMICUS CURIÆ (§ 3*)—REHEARING—RIGHT TO.

An amicus curiæ has no standing in court to apply for a rehearing.

[Ed. Note.—For other cases, see Amicus Curiæ, Cent. Dig. § 5; Dec. Dig. § 3.*]

6. APPEAL AND ERROR (§ 831*)—REHEARING—RIGHT TO GRANT—EXPIRATION OF TIME.

Conceding that the Supreme Court can ex proprio motu grant a rehearing, it cannot be

exercised after the legal delays for a rehearing have expired.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3212; Dec. Dig. § 831.*]

(Syllabus by the Court.)

Appeal from the Twenty-Ninth Judicial District Court, Parish of St. Bernard; Nemours Henry Nunez, Judge.

Specific performance by the Board of Commissioners for the Bayou Terre aux Bœuf Drainage District against Earl R. Baker. Judgment for plaintiff, and defendant appeals. Reversed, and suit dismissed.

Fernando Estopinal, for appellant. Henry L. Favrot and Nemours Henry Nunez, for appellee. William Milton Murphy, McCoy, Moss & Knox, and William Champion Carruth, amici curiæ.

## Statement of the Case.

MONROE, J. Plaintiff sues to enforce specific compliance with a contract whereby defendant agreed to buy at par 180 of its bonds, of $500 each. Defendant admits that he agreed to buy valid bonds issued by plaintiff, to the number and at the price stated in the petition, and expresses his willingness to accept and pay for such bonds, but he alleges that the bonds which have been tendered to him, though of the denomination and at the price agreed on, are not valid bonds, for the reasons:

1. That the special election purporting to have approved of the organization of the board of commissioners of the Bayou Terre aux Bœuf drainage district and to have authorized the issuance of the bonds in question and the levy and collection of a tax and of forced contributions for their payment was held by the order and under the direction of the police jury, whereas, under article 281 of the Constitution, and Act No. 145, p. 248, of 1902, and Act No. 159, p. 293, of 1902, as amended by Act No. 135, p. 225, of 1906, the authority to order and direct such election is vested in the board of drainage commissioners.

2. That the amount of bonds issued exceeds one-tenth of the assessed valuation of the property of the drainage district, in violation of article 281 of the Constitution.

## Opinion.

1. In the matter of Mayor and Board v. New Iberia Drainage District, 106 La. 651, 31 South. 305, this court was called on to determine whether the power to order and direct elections such as that here in question was vested in the police juries or the boards of drainage commissioners, and, construing the legislation on the subject up to and inclusive of the year 1900, held that the controlling law was Act No. 114, p. 178, of 1900, which was then the latest enactment, and which confers such power on the police juries in specific terms.

In June of this year the case of Esteves v. Board of Commissioners, etc., 121 La. 991, 46 South. 992 (in which the present plaintiff was defendant), was decided, the court holding that a special election held under article 281, by order and under the direction of the plaintiff, was illegal, and that the power to order and direct such election is vested in the police jury, affirming, in that respect, the decision in Mayor and Board v. New Iberia Drainage District, above referred to. Counsel for defendant, however, say that the acts of 1902 and 1906, set up in the answer, were not in existence when the first case was decided, and were not sufficiently considered in the last case, and that those acts, in effect, repeal Act No. 114 of 1900. Counsel also invokes "the spirit" of article 281 of the Constitution, as sustaining the proposition that the power to order and direct special elections, to be held under its authority, is vested in the boards of drainage commissioners.

The proposition last stated was carefully

considered in the case of Mayor and Board v. New Iberia Drainage District, and the conclusion was reached that, whilst it may be conceded that the drainage district is to have an autonomy of its own, and is to exercise such powers as may be specifically granted to it, the determination of the question, by whom shall the power to order and direct the special elections contemplated by article 281 of the Constitution be exercised, is left by that article to the discretion of the Legislature.

It is true that the article in question has been amended, first, in 1906, pursuant to Act No. 122, p. 207, of that year, and again in November of 1908, by the adoption of the amendment proposed by Act No. 300, p. 450, of the session of 1908. But neither of the amendments denies to the General Assembly the authority which otherwise it possesses of determining in whom the power to order and to direct the details of the elections contemplated by article 281 shall be vested. As to that question, therefore, the matter stands as it did when the opinion in the New Iberia Drainage District Case was handed down, and we adhere to the view expressed in that opinion.

Inquiring, now, whether there is anything in the statutory law enacted in 1902 or 1906 which takes from the police juries the power, with respect to the ordering and directing of the elections in question, which was vested in them by Act No. 114 of 1900, we find as follows: Act No. 145 of 1902 purports to be an amendment of Act No. 5, p. 7, of the Extra Session of 1899, the first section of which last-mentioned act provides that:

"Municipal corporations, parishes and drainage districts, * * * when so petitioned * * *, may submit to a vote * * * propositions to incur debt," etc.

But, whatever force there might at any time have been in the suggestion that the right to submit the "propositions" in question to a vote carries with it the authority to order and direct the conduct of the election at which such vote is to be taken, the matter was set at rest by Act No. 114 of 1900, which, as we have found, specifically and in unmistakable terms conferred that authority on the municipal corporations and the police juries, and this court, prior to the passage of Act No. 145 of 1902, had recognized the police jury as the "governing body" of the parish in which the drainage district may be organized. Bearing those facts in mind, it will be found that Act No. 145 of 1902, purporting, as we have said, to amend the act of 1899, does not refer to the act of 1900, and its first section (being an amendment and re-enactment of the first section of Act No. 5 of 1899) provides that:

"Municipal corporations, parishes and drainage districts * * * when, in the opinion of the governing body of such municipal corporation, parish, or drainage district, such action is necessary, or, when petitioned * * * may submit to the vote * * * propositions to incur debt," etc.

which appears to be a recognition of the construction which this court had placed upon the then existing law. Apart from that, and dealing with the matter as though the act of 1900 had not been passed, it can hardly be denied that, in the ordinary acceptation of the term, for the administration of civil and criminal justice, and for the exercise of political and governmental power in general, the police jury is, and the board of drainage commissioners is not, the "governing body" of the parish, and that its jurisdiction, as such, extends to all parts of the parish save to such municipalities in the parish as may be subject by law to other control, and save such specific control as may be vested by law in other state agencies. Elsewhere, the act under consideration uses the expression, "authorities ordering the election," but we find in it nothing that we can construe as operating a repeal of the

plain provisions of Act No. 114 of 1900, conferring the power here in question on the police juries.

Act No. 159 of 1902 purports to be an amendment of Act No. 12, p. 12, of 1900 (which latter act was held, in the New Iberia Drainage Case, to have been repealed by Act No. 114 of 1900, in so far as the two were in conflict).

It authorizes the police juries to divide their respective parishes into drainage districts, and to fix the limits of such districts and give them names; fixes the number and qualifications of the drainage commissioners, and provides that three out of the five authorized shall be appointed by the police jury, upon the recommendation of the property owners; declares that the drainage districts shall be bodies corporate, whose domiciles shall be designated by the police juries; that, in the creation of a drainage district and the appointment of commissioners, the police jury shall designate the time and place at which the latter shall meet; prescribes the general duties of tne board of commissioners and its officers, and confers specific authority and imposes specific duties on them in the matter of drainage work. Section 7 reads, in part:

"That, in order to carry out the provisions of this act * * *, the commissioners shall have power, when authorized to do so by the vote of the majority, in number and amount, of the property tax payers * * *, voting at an election to be held for that purpose, after due notice of said election shall have been published, * * *, may (to) incur debt * * *, and may be authorized by the property tax payers, voting at such election, to levy a special tax * * *. And the said drainage district shall have * * * what other powers are conferred * * * article 281 of the Constitution * * * and the acts carrying into effect said article," etc.

And, though there are many other provisions, none of them deal particularly with the subject of special elections, and none come any nearer than those above quoted or mentioned to withdrawing from the police juries the power upon that subject conferred by Act No. 114 of 1900. Act No. 135, p. 225, of 1906, amends and re-enacts section 2 of Act No. 159 of 1902, but contains no reference whatever to the subject of the special elections.

We, therefore, conclude that the provisions of Act No. 114 of 1900, vesting authority in the police juries in the matter of the special elections to be held under article 281 of the Constitution, remain unrepealed and unaffected by the subsequent legislation to which we have been referred, and that the power to order and provide for the conduct, returns, etc., of the special election which has been called to our attention in this case, was vested in the police jury of the parish of St. Bernard.

2. Agreeably to the wishes of the property taxpayers of the Bayou Terre aux Bœuf Drainage District (who were qualified to vote, and who availed themselves of the privilege) as expressed at a special election held for that purpose, plaintiff has issued, or proposes to issue, negotiable bonds of the district of the par value of $100,000. It appears, from the certificate of the parish assessor, that:

"The assessment of that portion of St. Bernard parish," within the boundaries of the district, "for the year 1908, aggregated $410,845, on the land, and that there are 218,709 acres of land comprised within the district."

Article 281 of the Constitution, as amended pursuant to Act No. 122 of 1906, reads (so far as it need be quoted) as follows:

"Municipal corporations, parishes, school districts and drainage and sewerage districts, * * * when authorized to do so, * * * may incur debt and issue negotiable bonds therefor to the extent of one tenth of the assessed valuation of the property within said districts, as shown by the last assessment made prior to the submission of the proposition to the property tax payers, * * * and may be authorized by the property tax payers * * * to levy * * * special taxes; * * * provided that said taxes, so imposed, do not exceed 5 mills on the dollar of the assessed valuation, in any one year, nor run for a greater number of years

than the number named in the proposition submitted to the tax payers. * * * Nor shall such bonds run for a longer period than 40 years from their date or bear a greater rate of interest than 5 per cent per annum, or be sold * * * for less than par. The * * * district issuing such bonds shall provide for the payment of the interest, annually or semi-annually, and the principal thereof at maturity, provided, that the total issue of bonds by any * * * district, for all purposes, shall never exceed ten per cent of the assessed value of the property in such * * * district; * * * provided, that nothing herein contained shall prevent drainage districts from being established under the provisions of existing laws, and all drainage districts established under the laws of the state, shall, in addition to the powers herein above granted, have the further power and authority to levy and assess annual contributions of acreage taxes, for the purpose of providing and maintaining drainage systems, on all lands situated in such districts, not exceeding 25 cents per acre, for a period not to exceed 40 years, when authorized to do so by a vote of a majority, in number and amount, of the property tax payers of said districts, qualified as electors, * * * voting at an election held for that purpose, as provided in the first part of this article, and said drainage districts, through the boards of commissioners thereof, may incur indebtedness and issue negotiable bonds therefore, payable, in principal and interest, out of, and not to exceed, in principal and interest, the aggregate amount to be raised by said annual contributions during the period for which the same are levied. No such drainage bonds shall be issued for any other purposes than that for which such contributions were voted, and shall not run for a longer period than 40 years from their date, nor bear a greater rate of interest than 5 per cent per annum, nor be sold for less than par.

"All contributions and acreage taxes heretofore authorized by a vote of a majority, in number and amount, of the property tax payers, qualified to vote under the laws of this state at elections held in drainage districts organized under existing laws, are hereby ratified and confirmed, and their validity shall not be questioned."

Under the foregoing constitutional provisions, a drainage district may issue bonds, based on the ad valorem tax, to an amount equal to one-tenth of the assessed value of its property, and no more; and it may issue other bonds, based upon the specific, or acreage, tax (not exceeding 25 cents per acre), up to such amount as may be paid, in principal and interest, from the proceeds of such tax, within the limit of time fixed for the payment of the bonds.

In either case, the maximum limit of time during which the tax may be levied and within which the bonds are to be paid is 40 years.

In the instant case, the ad valorem tax is fixed at 5 mills on the dollar, and the specific, or acreage, tax, at 3 cents per acre, both to be levied for 40 years; and, upon the faith and security of both, plaintiff proposes to issue $100,000 of its bonds, bearing interest at 5 per cent. and running 40 years.

It is manifest, however, that the issue of $100,000 of bonds, bearing 5 per cent. interest and having 40 years' to run, against an assessment of $410,845 and against a specific tax of 3 cents per acre on 218,709 acres, cannot be sustained upon either of the bases, taken separately, provided in the Constitution, since, upon the one hand, the debt thus to be incurred would exceed one-tenth of the assessed value of the property of the district subject to taxation, and, upon the other hand, it could not be paid, in principal and interest, within 40 years from the proceeds of the specific tax of 3 cents an acre on 218,709 acres. The question, then, is does the Constitution authorize the uniting together of the two bases for the common support of a debt, the resting of which upon either, alone, is prohibited?

Counsel for plaintiff says, in his brief:

"The certificate of the assessor shows, in round figures, an assessment of $400,000 * * * and * * * 200,000 acres. * * * Now, at 5 mills, * * * this shows a revenue of $2,000, and, at 3 cents an acre, a revenue of $6,000, or a total of $8,000, one-fourth of which is from the 5 mill tax. Therefore, must we agree that the 5-mill tax secures one-fourth of the bond issue, or $25,000, which is less than 10 per cent. of one year's assessment, and the balance of the bond issue, $75,000, is secured by the acreage tax, which is within 22 cents of the maximum allowed by law."

The major premise, that the two taxes, combined, will pay the debt, is sound enough; but the minor premise, that the ad valorem

tax of 5 mills stands for only one-fourth of the debt, is at variance with the contract nominated in the bond, and we are constrained to hold that the conclusion, that the proposed scheme of finance is authorized by law, is without adequate support.

According to the proposition submitted to the taxpayers, and according to the terms of the bond tendered to the defendant, the debtor of the ad valorem and specific taxes are to be bound, each class, for the whole debt of $100,000, and though, if the 5-mill tax is collected for the 40 years, it will produce more than one-tenth of the assessed value of the property of the district, neither of the taxes taken separately will produce enough to pay the debt. We go, then, to the Constitution, and see that, the election having been held under proper authority and the qualified taxpayers having so declared, plaintiff is authorized to incur debt and issue negotiable bonds therefore to the extent of one-tenth of the assessed valuation of its property, upon the basis of an ad valorem tax (to be levied on all taxable property) not exceeding 5 mills, and we come back to the proposition submitted to the taxpayers, and to the form of the bond tendered to the defendant, and find that plaintiff proposes to incur a debt against the debtors of the ad valorem tax which largely exceeds such valuation.

It is no answer to the objection that, to incur such a debt, would be to disregard the limitation of authority imposed by the Constitution, to say that another class of taxpayers are also to be bound with those who may owe the ad valorem tax, for, if the framers of the Constitution had intended that the 10 per cent. limit might be exceeded under such circumstances, they would, no doubt, have so provided. Nor does it meet the difficulty to say that the debtors of the specific tax will surely pay their proportion of the debt to be incurred, for, first, the debt cannot be incurred, and, second, no one knows whether the tax debtors will pay their respective proportions or not. In fact, no proportions are determined in the proposed contract, and we know of no authority by which they can be determined. Quite the contrary. According to the terms of the proposed contract and bond, if 100,000 acres of the land now subject to the specific tax should be engulfed in a tidal wave, the shortage in the specific tax would have to be made good from the ad valorem tax. Another objection is that, if the proposed debt of $100,000, with interest for 40 years, should eventually be paid by the two classes of debtors in some sort of equitable proportions, the fact remains that the ad valorem tax debtors are to be taxed for the payment of a debt exceeding one-tenth of the assessed valuation of their property, and the debtors of the specific tax are to be taxed for the payment of a debt exceeding the aggregate amount which can be derived from the tax imposed— all in direct disregard of the plain provisions of the Constitution. It may be remarked that, whilst there were 84 votes, representing property assessed at $30,588.73, cast in favor of the proposition submitted, and none against it, the owners of property assessed at $380,256.27 have not expressed their views. Of course, no one is to blame for that but themselves, but they are, at all events, in a position to deny at any time that they have estopped themselves (assuming that such plea would otherwise be good against them) by actual participation in the contract here sued on.

It is suggested (in the brief of plaintiff's counsel) that the questions here at issue are set at rest by the following provision contained in the amendment to article 281 of the Constitution, adopted at the general election held in November, 1908, to wit:

"All contributions and acreage taxes, heretofore authorized by a vote of a majority, in number and amount, of the property tax payers,

qualified to vote under the laws of this state at elections held in drainage districts organized under existing laws, are hereby ratified and confirmed, and their validity shall not be questioned."

It is sufficient to say that the provision thus quoted (which is a mere re-enactment of a provision already in the Constitution) purports to validate only those contributions and taxes "which have been authorized by a vote of a majority, in number and amount, of the property tax payers qualified to vote" etc., and that in this case we know that a majority in amount of the taxpayers did not participate in the election, and the indications are that a majority in number did not so participate. The case being with defendant, it is ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that there now be judgment rejecting the demand of the plaintiff, and dismissing this suit at its cost in both courts.

## On Rehearing.

NICHOLLS, J. On the day fixed for this rehearing, opposition was made to the reopening of the case on the ground that at the date it was granted the original decree had become final and the appeal had passed out of the jurisdiction of the Supreme Court; that that decree had been acquiesced in by both the plaintiff and the defendant; and that the rehearing was granted at the instance of an amicus curiæ who had no capacity to apply for it.

The original decree was rendered on the 30th of November, 1908, the application for a rehearing made on December 10, 1908, and the rehearing granted on January 18, 1909. The decree was at that time, under Act No. 223, p. 341, of 1908, final. The order of this court of the 18th of January, 1909, was therefore improvidently granted. It is suggested that, although an amicus curiæ has

no standing to apply for a rehearing (Life Association of America v. Hall, 33 La. Ann. 57), yet the court had itself had authority, ex proprio motu, to order a rehearing. Assuming that such an authority existed in the court, that authority, to be legal, would necessarily have to be exercised before the original decree had become final. We have no alternative but to set aside the order of the 18th of January, 1909.

For the reasons herein assigned, it is ordered, adjudged, and decreed that the order of this court of the 18th of January, 1909, granting a rehearing herein, be and the same is hereby set aside as having been improvidently granted, and that the original decree herein rendered be, and it is hereby, reinstated and made the judgment of this court.