BREAUX, C. J.
The purpose of plaintiffs in instituting this suit was to have it decreed that the proceedings were conducted in due and regular form; that they are in every respect legal, and the bonds are valid.
There is no dispute and no ground of dispute as to the facts. The demand of plaintiffs is clearly stated, and the defense is set forth in the answer with some particularity.
Whether a tax of five mills on all assessable property in the plaintiff district, and another tax of three cents per acre on every acre of land within its limits shall be levied for 40 years, beginning with 1908, for the purpose of draining the district, have been legally imposed, is the question.
The proposition to levy the tax was submitted to the property taxpayers and an ■election held on August 15, 1908.
The proposition to issue bonds in the sum ■of 8100,000 was submitted at the same time.
The commissioners proclaimed the election ■carried, and issued the bonds on the 1st of September, 1908.
These bonds were sold, but the purchaser, to wit, Earl R. Baker, declined to accept on grounds which will be noticed later.
We for a moment take up for decision the question growing out of the election of August 15, 1908, and the bond issue just before mentioned.
A suit was brought in the district court to have the election of August 15, 1908, and the issue of bonds of September 1, 1908, declared legal.
Judgment was rendered in this suit in favor of the plaintiff.
The defendant before named, Baker, brought up an appeal to this court, and in this court it was decided that the election had been properly held under the authority of the police jury; but this court declined to maintain the bonds as valid, as it was sought to secure them by both taxes, to wit, the ad valorem 5 per cent, tax and a specific three-mill tax per acre combined.
On that ground, the judgment appealed from was reversed.
On the 9th of January following, the police jury called an election in compliance with the requirements of the decision in the former case; also in the case of Esteves v. Bayou Bceuf Drainage Dist., 121 La. 991, 46 South. 992.
The following were the propositions submitted to the property taxpayers of the district at the last-mentioned election:
(1) “To vote a five mills tax for forty years on all assessable property in the district, beginning with 1908, as voted on August 15, 1908.”
(2) “To vote a three cents per acre tax on every acre of land in the district for forty years, beginning with 1908, voted on August 15, 1908.”
(3) “To create an indebtedness of one hundred thousand dollars, and authorize the issuing of bond for a like amount, the bonds to bear five per cent, interest, to run for forty years”
—consisting of two amounts of $40,000 and $60,000; secured the first by bond for amount of $40,000, the second by bonds for amount of $00,000.
This court held in the case of Buard v, Board of Commissioners of the Portage Drainage District of Pointe Coupee, 123 La. 590, 49 South. 204, that the board of commissioners were the governing authorities, and that they alone were authorized to hold tax elections in the election districts. The views to the contrary, in prior opinions, to the extent that the parties to thpse cases were concerned, remained unaffected by the last opin *219 ion; none the less, the board of commissioners of the Bayou Terre-aux-Bceuf drainage district deemed it advisable to call an election for June 14, 1908, and submitted the following:
(1) “To ratify and confirm the voting of the five mills tax for forty years on the assessable property in the district, beginning with 1908.”
The tax was voted on August 15, 1908.
(2) “To ratify and confirm the voting of a three cents per acre tax on every acre of land in the district for forty years, beginning with 1908. Tax voted on August 15, 1908.”
(3) “To create an indebtedness of forty thousand dollars and authorize a bond issue of like amount, payable in forty years, to be secured by the five mills tax before mentioned.”
(4) “To create an indebtedness of sixty thousand dollars and authorize a bond issue of like amount, bearing interest and payable as before mentioned, to be secured by three cents per acre lax.”
It will be observed that plaintiffs and the taxpayers qualified to vote have separated the two taxes — that is, the ad valorem and the specific — and they have classified the bonds as a security for their payment, and identified each class with the particular security stated, so as to conform with the views of the court as expressed in the former Baker Case, 123 La. 75, 48 South. 654.
These last propositions were submitted to the property taxpayers at an election held on June 14, 1909, as just above stated, and after the delays and advertisements the property taxpayers in the district ratified and confirmed the proceedings before mentioned and again authorized the issuance of these bonds.
They were the bonds which were tendered and which the purchasers declined to accept.
The proceedings were regular.
The defendant in support of- his refusal to accept the bonds argues, through counsel, that Act No. 145, p. 248, of 1902, and its amendment, intrusted the board of commissioners of the district with the holding of elections, and that an election held under the direction of the police jury is null and void.
We will say that the plaintiffs in holding the election of January 9, 1909, under the auspices of the police jury, complied with the decisions of this court in the former Baker Case, 48 South. 654, 123 La. 75, and the case of Esteves v. Bayou Terre-aux-Bœuf Drainage District.
While it is true that the opinion was not res judicata, it was, none the less, rendered inter partes, and must be considered from that point of view strictly as between the parties, as binding, but it must be said that it is not binding further than inter partes. .
We will not stop to discuss at any length the two elections, the one of August 15, 1900, and the other of January 9, 1909, further than to state as above, as between the parties, they must have authority.
The maxim, “Actus curite neminem gravahit” — that is, the action of the court should injure no one — is applicable. These parties have accepted the decision.
This brings us to a consideration of the important issue of the case; that is, the effect to be given to the last election, that held on June 14, 1909.
The proposition of the defendant is that an election called to validate an invalid election proceeding cannot be retroactive and have the effect of validating the first election.,
Why is it not possible for the taxpayer to ratify a prior election? It is an approval of that which was done, and a second expression of their will. There was nothing new proposed. There was nothing in law to prevent them from expressing their will a second time on the subject in order, if there had been any illegality or irregularity in the first election, it might be cured. These taxpayers came forward, as they had a right to do, and once more expressed the desire to improve their district as proposed. They expressed their willingness in due form to assume the obligations of paying the bonds.
*221 If we were to concede for a moment that the taxpayers did not ratify that which was done, the Drainage District would, none the less, be bound for the taxes and the bonds from the date before mentioned. But they did ratify. The purpose in holding this last election was to make the bonds legal and valid as originally issued.
Under the circumstances, in view of prior decisions, there can be no valid objection to the date of the bonds, which precedes by some months the date of the election. They had issued that which they conceived were valid bonds, and which they had a right to conceive were valid bonds after having complied with the text of the decisions to which we have before referred.
There was no error committed in the proceeding of the last election held to render the invalidity of these bonds reasonably certain. The plaintiffs relied upon the conclusiveness of the expressions of the court.
It might work a grievous wrong, the Supreme Court of the United States said in a case somewhat similar, “to overthrow these expressions and decisions.” “When the decision is one affecting the validity of bonds, notes, or bills, expressions and decisions should generally be held conclusive,” particularly as relates to those who are parties to the litigation. Vail v. Territory of Arizona, 207 U. S. 201, 28 Sup. Ct. 107, 52 L. Ed. 169.
The actions taken by the taxpayers is really more forcible and expressive than a ratification or a confirmation, by reason of the fact that they absolutely obligated themselves in this election to pay the taxes and the bonds as well as the interest.
We have considered every point presented, and have not found that there is good ground upon which to decree the nullity of the election or the invalidity of the bonds.
For reasons assigned, the judgment appealed from is affirmed.