MONROE, C. J.
[1,2] This action was instituted by the late B. R. Forman, shortly before his death, and is now prosecuted by the dative executor of his last will and his heirs of age, under the authority of Act No. 115 of 1912, which is entitled and reads as follows:
*1034 “An act to provide for the compensation of Benjamin Rice Forman for his services in the case of the State of Louisiana v. New Orleans Waterworks Company, and to make it the duty of the sewerage and water board of New Orleans to pay such compensation as may be agreed on or fixed by final judgment of court, with five per cent, interest from 5 June, 1902. The judgment fixing the amount may be enforced by mandamus and may be satisfied by the delivery of an equal amount of public improvement bonds.
“Section 1. * * * That it is hereby made the legal duty of the sewerage and water board of New Orleans, created by Act No. 6, of 1899, to pay to Benjamin Rice Forman a just compensation for his services rendered in the case of the State of Louisiana v. New Orleans Waterworks Company, in the civil district court, parish of Orleans, in the Supreme Court of Louisiana and in the Supreme Court of the United States, the amount to be fixed by consent or, in case they cannot agree, then, by final judgment of court, with five per cent, per annum, interest, from 5 June, 1902, when the mandate from the Supreme Court of the United States was filed in the Supreme Court of Louisiana.
“Sec. 2. * * * The judgment that may be rendered in the favor of Benjamin Rice Forman, against the sewerage and water board under this act, may be enforced by mandamus against it, and, in the judgment fixing the amount, the court shall order the sewerage and.water board to issue warrants or drafts on the board of liquidation of the city debt for the amount thereof, with interest and costs added, and it shall be the duty of said board of liquidation of city debt to pay such warrants or drafts.
“See. 3. * * * That the amount of such compensation agreed on or the amount of such judgment as may be rendered by authority of this act, may be satisfied by the delivery of an equal amount of public improvement bonds authorized by Act No. 6, 1899, and subsequent acts, amendatory thereof.”
The General Assembly had previously passed a somewhat similar act (No. 210 of 1906) and a somewhat similar suit was instituted and prosecuted to final judgment in this court. Forman v. Sewerage and Water Board, 119 La. 49, 43 South. 908, 909, 910 (12 Ann. Cas. 773). But the act so passed concluded, as follows:
“Provided that nothing in this act shall be construed to mean that a right or cause of action is created in favor of said Forman against said board. The intention being to give him the right to enforce any cause of action that he may have either in law or equity.”
And this court, in deciding the case, said:
“There can be no doubt that the services of plaintiff were immensely valuable, and inured enormously to the benefit of the defendant b'oard and of the people of the city of New Orleans, and, incidentally, of the whole state. There can be no doubt, also, that the task which plaintiff undertook and successfully accomplished was gigantic, in respect both to the mountain of work to be done and of the legal ability required to do it, and there can be no doubt that plaintiff ought to be remunerated from some source; but, it is equally plain that no right of action has ever arisen in his favor against the defendant board. Plaintiff was employed by the state, and not by the defendant board, and was the attorney of the state, and not of the defendant board. The suit was by the state to forfeit the charter of one of her corporations. The defendant board not only was not party to it, but, for over a year after it had been brought, was not even in existence. The following authorities are distinctly in point, and are conclusive against a right of action of any kind, equitable or legal, arising in favor of an attorney at law for legal services without his having been employed. * * *
“Knowing how arduous and valuable and meritorious were the services of Mr. Forman, it is with regret that the court finds itself compelled to decide against him.”
And it was field (quoting from the syllabus) that:
“The right of an attorney at law to demand payment for his services depends upon whether he was or not employed. He cannot recover from one who did not employ him, however valuable the result of his services may have been to such person, and especially if the person was not even a party to the suit.”
The act of 1912 under which this suit has been brought contains no such, proviso as that which was contained in the act of 1906. It simply declares, without proviso or condition, that “it is hereby made the legal duty of the sewerage and water board * * * to pay to Benjamin Rice Forman a just compensation for his services rendered in the case of the State of Louisiana v. New Orleans Waterworks Company,” that what may constitute such “just compensation” shall be determined by consent, or, if the parties are unable to agree, by final judgment of court, and that the payment of the judgment may be made by the sewerage and water *1036 board, or enforced against it, in a particular way. So far, therefore, as the courts are concerned, the duty which the act. purports to impose upon them is merely to determine the value of the services rendered by Mr. Forman, and give judgment accordingly; and all that stands in the way of the discharge of that duty is the plea of res judicata, predicated upon the judgment above cited, and herein filed by the sewerage and water board, and the objection, interposed by that board, that the act of 1912 is unauthorized and unconstitutional.
The plea of res judicata covers part, but not the whole, of the case here presented, since the judgment relied on as supporting it merely held that neither the services rendered by Mr. Forman nor the act of 1906 created any cause of action, legal or equitable, in his favor and against the sewerage and water board; whereas the suit now before the court is prosecuted under the act of 1912, and, upon the pleadings of the defendant, presents the questions, whether that act, purporting, as it does, to create such cause of action, is competent and constitutional legislation.
It is clear that the judgment, to the effect that Mr. Forman had no claim, legal or equitable, against the sewerage and water board, is conclusive upon that issue, and as entirely beyond legislative control as is any other final judgment of this court, quoad persons and issues with respect to whom, and to which, the court was vested with jurisdiction, and, as completely beyond the control of the court as of the Legislature; and hence there is no power lodged anywhere that can now so change the situation as to give the heirs of Mr. Forman the status of creditors, in any sense, of the sewerage and water board for the compensation here claimed.
The remaining question, and the only question left for decision, then, is whether it is competent and constitutional for the General Assembly to require, and for this court to decree, that the sewerage and water board shall devote a fund which the Constitution has placed under a particular control, for a particular use, to the payment of a claim, the holder of which, as thus ascertained and determined by final judgment, has no right, legal or equitable, in or to such fund. The learned counsel for plaintiffs, however, ignore the narrow compass within which the case here presented must be restricted, and, arguing at length to show that their clients have an equitable claim against the defendant, cite authorities in support of the power of the General Assembly to compel its payment. Thus they say:
“Briefly stated, our contention is that the sewerage and water board, being a municipal corporation, is subject to the control of the Legislature in all respects, save in so far as the act creating it was imbedded in the organic law of the state and thereby taken beyond the domain of legislative control. The dedication of the funds arising from the tax to the pur-pose of acquiring a water system either by construction or purchase, was, no doubt, crystallized in this manner, and therefore removed from the possibility of legislative interference. But that crystallization went no further. It did not preclude the Legislature from applying those funds to the very purposes to which the tax was dedicated. Some control over the subject-matter by the Legislature was undoubtedly reserved. This reservation justly appears in the carefully reserved right to amend the act of 1899, a right which is expressly ratified and confirmed by the constitutional amendment itself. The purpose was served, no doubt; the make-up of the board was sacred.”
Both points were so decided in State ex rel. Saunders v. Kohnke, 109 La. 838, 33 South. 793; but beyond this the Legislature was free. Let us now ascertain what the “sacred purpose” was. It was:
“To acquire by construction or purchase a waterworks system for the city of New Orleans.”
A recognized part of such an undertaking was the clearing of “the ground for the new edifice. * * * ”
“Before the new water system could be constructed, it was essential to clear the site. The site was obstructed by the monopoly franchise of the old waterworks company. The removal of *1038 that obstruction was so plainly necessary, and the cost of the removal so plainly a part of the object for which the special tax was levied, that Act No. 6 of 1899 carried, as section 15, a special provision expressly authorizing the purchase, or the expropriation, of that franchise, and expressly reciting that same could be paid for by the assumption of-the outstanding bonds of the old company. The public valued the property of the old company at between $2,000,000 and $3,000,000. If, therefore, the site had been cleared by expropriation, that clearance would have cost the special tax fund that sum of money. * * *
“If Mr. Forman’s services in removing the monopoly franchise of the New Orleans Waterworks Company was not strictly in line with the purpose of the people and their petition to construct a water, sewerage, and drainage system, there is nothing ‘strictly in line’ with it. It was the suit brought by Mr. Forman that provoked and inspired the taxpayers’ petition. The people awoke to the fact that maybe they could hope to own a system which had previously owned them. * * *
“There can be no question that it [the claim here asserted] is founded on the receipt and acceptance of property and the obligation, thence arising, to pay for the same. * * *
“As to the point, that ‘the sewerage and water board was not in existence when the suit [to forfeit the charter -of the waterworks company] was brought,’ there is nothing to it., If there is such an equitable foundation for the act as to warrant the Legislature in directing payment for the service, it may impose the duty upon the board, whether then created or not.”
They then quote McQuillin on Municipal Corporations, vol. 1, § 237, p. 536, to the effect that:
“The payment of legitimate claims against a municipal corporation may be compelled by the Legislature. The courts permit the Legislature to use the power of compulsory taxation for this purpose. The payment may be enforced, when equitable in character, although it may not be binding in law, and even unenforceable in law or equity.”
But, no doubt, considering it inapplicable to their case, the counsel do not quote the following, from the same volume and section, to wit:
“But the Legislature has no power to compel a municipal corporation to pay a claim made against it which it is under no obligation, moral or equitable, to pay; nor can the Legislature require a court to render a judgment for such claim upon proof of the amount thereof.”
The instant case is the more clearly within the rule last above stated for the additional reason that the fund from which it is proposed that the claim of the plaintiff shall be paid, and the only fund upon which the sewerage and water board can draw, is placed, not by legislative action alone, but by the Constitution of the state, in the custody of the board of liquidation of the city debt, to be drawn upon only for the establishment and maintenance of the water, sewerage, and drainage systems of New Orleans, and for the payment in principal and interest of the bonds issued in that behalf. The contention that the compensation of Mr. Forman should, from an equitable point of view, be regarded as among those uses presented the main, if not the sole, issue in the case heretofore decided, and that issue, as we have seen, was decided adversely to the contention, and became a “thing adjudged'.” The decisions cited by the learned counsel support the doctrine. as stated in the excerpt from McQuillin, quoted by them, but do not bear upon this case, since the defendant now before the court incurred no obligation whatever with respect to the cost of the proceeding by the state to withdraw the monopolistic franchise which it had granted to the waterworks company, when it found that company violating the terms of the grant and using the franchise as a means of oppression; and we find no authorities which hold that a Legislature can compel the diversion of a fund, the destination of which has been fixed by the Constitution, to the payment of a claim which quoad, and contradictorily with, the parties by and against whom, respectively, it is made, there has been a final judgment decreeing it to be neither legal nor equitable. The judgment appealed from is therefore affirmed.
O’NIELL, J., takes no part, not having been a member of the court when the case was argued.