(67 South. 956)

No. 20990.

MARCEAUX v. EAST CAMERON DRAIN-
AGE DIST. NO. 3.

(Feb. 23, 1915.   Rehearing Denied March 22,
1915.)

*(Syllabus by the Court.)*

1. DRAINS ⬅2 — "GRAVITY DRAINAGE" —
STATUTE.

"Gravity drainage" provided for in para-
graph 2 of article 281 of the Constitution, as
amended by Act No. 192 of 1914, p. 370, is a
system of drainage of land "which is susceptible
of gravity drainage," and has reference to land
which may be entirely drained by such system.

[Ed. Note.—For other cases, see Drains, Cent.
Dig. § 17;  Dec. Dig. ⬅2.]

2. DRAINS ⬅28—DRAINAGE SYSTEM — PETI-
TION—TAXATION.

Taxes, or forced contributions, on land for
drainage purposes, where the land has to be
leveed and pumped, must be petitioned for by
the landowners, resident and nonresident, of the
district to be drained, as is provided for in para-
graph 3 of said article 281 of the Constitution.

[Ed. Note.—For other cases, see Drains, Cent.
Dig. §§ 20–23;  Dec. Dig. ⬅28.]

*(Additional Syllabus by Editorial Staff.)*

3. WORDS AND PHRASES—"DRAINAGE."

"Drainage," as applied to land, contemplates
the removal of water therefrom by means of an
artificial channel or trench.

[Ed. Note.—For other definitions, see Words
and Phrases, Drainage.]

Appeal from Fifteenth Judicial District
Court, Parish of Cameron; Winston Overton,
Judge.

Action by Dupraville Marceaux against the
East Cameron Drainage District No. 3.
From a judgment for plaintiff, defendant ap-
peals.   Affirmed.

T. Arthur Edwards, Dist. Atty., and Mc-
Coy & Moss, both of Lake Charles, and Rob-
ert L. Knox, of New Orleans, for appellant.
Robira & Miller, of Jennings, for appellee.
Foster Milling, Saal & Milling, Frank W.
Hart, H. L. Favrot, Richardson & Soule, and
Oliver S. Livaudais, all of New Orleans,
amici curiæ.

SOMMERVILLE, J.   Plaintiff is the own-
er of 959 acres of overflowed land in the
East Cameron Drainage District No. 3, and
he asks for judgment against the authorities
of the district, declaring all of the proceed-
ings up to and including an election held on
June 23, 1914, and the promulgation thereof
on July 3, 1914, to be illegal, invalid, and
void, and that an ordinance levying and im-
posing an acreage tax of 12 cents per acre
per annum on all lands situated in said dis-
trict, and authorizing the issuance of bonds
in the sum of $260,000, be declared illegal,
and that same cannot serve as a basis for
the collection of the tax sought to be im-
posed, etc.

Defendant answered that plaintiff's land
would be improved by the drainage to be con-
structed from the proceeds of the tax and
the bonds to be issued, and that the increased
value of the land would amount to more than
the total tax levied against it.   It alleged
that the money derived from the tax and
bonds would be used for the purpose of con-
structing a canal, i. e., a canal designed to
drain all of the land included in the district,
including plaintiff's land, by gravity; and
that the results from this gravity canal
would greatly enhance the value of plaintiff's
land, and will make it fit for pasturage
throughout the year; and that said gravity
drainage canal would be the basis for the
draining of the whole of said district when
it will have been divided into units for the
system of perfect drainage by leveeing and
pumping.

Article 281 of the Constitution of 1898 pro-
vides that taxpayers, in municipal corpora-
tions, parishes, and drainage districts, by an
election held for the purpose, may tax them-
selves an ad valorem tax for drainage and
other purposes.   The original article contains
but two paragraphs.   It has been amended
at various times, until it now contains six
paragraphs, as set forth in the Constitution
of 1913.   It was again amended in 1914 by
the passage of Act No. 192, p. 370, which act,

or joint resolution, was adopted at the general election in 1914.

This last-mentioned act amended paragraphs 2 and 3 of said article 281 of the Constitution of 1913; and in paragraph 2 gravity drainage in drainage districts is authorized on a majority vote of the property taxpayers of the drainage district where land "is susceptible of gravity drainage." The defendant drainage district proceeded, under this paragraph, to levy a forced contribution of 12 cents an acre on the land within said district, after an election favorable to such work.

And plaintiff contends that the governing authorities in said district could not impose a forced contribution on the lands within that district except upon a petition of the taxpayers, preceding the vote or election by the property holders, as is provided for in paragraph 3 of the article 281.

[2] The only question submitted for the decision of the court is as to whether it was necessary that the imposition and collection of the contribution sought to be enforced against plaintiff and his property had to be preceded by a petition of the property holders of that district or not.

Paragraphs 2 and 3 of article 281 of the Constitution, as amended, are as follows:

"Paragraph 2. Police juries in any parish or parishes may in accordance with law create drainage districts, which in addition to the powers hereinabove granted, shall have further power and authority to establish and maintain drainage systems and the governing authorities of such districts, when authorized by a majority in number and amount of the property taxpayers of said district qualified to vote under the Constitution and laws of the state of Louisiana who vote in an election held for that purpose, may, for the purpose of establishing and maintaining gravity drainage in such districts, impose and collect for a period not exceeding forty (40) years forced contributions or acreage taxes not exceeding fifty cents (50 cts.) per acre per year on each and every acre of land, which is susceptible of gravity drainage, in the subdivision where such an election is held. The governing authority of such subdivisions, when authorized as set forth, may incur debt and issue negotiable bonds to represent same, secured by the forced contribution or acreage taxes above described provided that the total amount of debts thus incurred or bonds issued shall not exceed in principal and interest the aggregate amount to be raised by said annual contributions or acreage taxes during the period for which the same are imposed and that no such bonds shall be issued for any other purpose than that for which the said contributions or acreage taxes, are voted, to run for a longer period than forty (40) years, bear a greater rate of interest than five per centum per annum, payable annually or semiannually, or to be sold for less than ninety per centum (90%) of par. And the board of commissioners of drainage district without submission to the taxpayers are authorized to levy additional taxes under the terms and conditions of this article and within the limits fixed thereby for the purpose of perfecting and completing any system of drainage eighty per cent. of which shall have been accomplished at the time of said additional levy of taxes, and to fund the avails of said additional levy of taxes into bonds under the terms and conditions set forth in the present article.

"Paragraph 3. When the character of any land is such that it must be leveed and pumped in order to be drained and reclaimed the board of drainage commissioners of the district in which the land is situated, shall upon the petition of land owners, whether individuals or corporations, resident or nonresident, owning not less than a majority of acres in the area to be affected, ascertain the cost per acre of draining and reclaiming said land incur debt against each and every acre of land thus situated for an amount sufficient to drain and reclaim it, and to issue for such debt negotiable bonds for the total aggregate amount of the total cost of such drainage, which bonds shall run not longer than forty (40) years from their date and bear interest at a rate not exceeding five per centum per annum, payable annually or semiannually, and shall be sold for not less than ninety per centum (90%) of par; and said board of drainage commissioners shall each year as long as any bonds are outstanding levy annually upon each and every acre of land, whether public or private, situated in said drainage or subdrainage district, forced contributions or acreage taxes in an amount per acre sufficient to maintain the drainage of the said district or subdrainage district. to pay the interest annually or semiannually and the principal falling due each year, or such amount as may be required for any sinking fund for the payment of said bonds at maturity, provided, that such forced contributions or acreage taxes for all purposes shall never exceed three dollars and fifty cents ($3.50) per acre per annum.

"All bonds heretofore issued under and by virtue of this article 281 of the Constitution by the governing authority of any subdivision, which have heretofore not been declared invalid by a judgment of a court of last resort in the state of Louisiana and more than sixty (60) days have elapsed since the promulgation of the

proceedings evidencing the issuing of said bonds, are hereby recognized and declared to be valid and existing bonds and obligations of the district or subdivision issuing the same, and no court shall have jurisdiction to entertain any contest wherein their validity or constitutionality is questioned."

[1] Article 281, in its entirety, provides for systems of drainage and other works of public improvement to be carried on in the several drainage and other districts of the state. And paragraphs 2 and 3 of the article refer to lands of different conditions, and to different modes or systems of drainage. Paragraph 2 refers to land which may be drained by gravity drainage; which drainage defendant, in its answer, defines as:

"A canal designed to drain all of the land in the defendant's district, including that of plaintiff, by gravity."

[3] In providing that drainage districts may "provide and maintain drainage systems" within said districts, we understand the language of the Constitution to mean that the districts must be drained by the systems established; that is, that the land drained should be rid of its superfluous moisture by the system adopted and established in any one district. Drainage, as applied to land, ordinarily contemplates the removal of the water therefrom by means of an artificial channel or trench. 14 Cyc. 1023, 1024.

It is not at all clear that the legislators, in Act No. 192 of 1914, p. 370, had the intention to depart from the ordinary meaning of the word "drainage" when they provided for the gravity drainage of the lands of the state. The meaning of the words used is clear and unambiguous, and the court will not seek for the possible intention of the legislators which is not expressed by the language used in the act.

The evidence of defendant in the case shows that the land of plaintiff, together with that of all other land in the defendant district, is swamp or overflowed land, and that the proposed gravity drainage would

have the effect of reducing the water on said land from one to two feet; and it further shows, that the land of plaintiff would still continue to be under water, and that it would not be habitable or cultivable. The only use to which it might be put would be that of pasturage; and then it would be subject to the ebb and flow of the tide which exists in the Mermentau river, which is close to the Gulf of Mexico.

The engineer of the defendant district further testified:

"I would not have advised that [gravity drainage] being all that was necessary to make the land cultivable. * * *
"The levees would be necessary to keep the overflow of water from the river and Gulf, and it would be necessary to lower the water level on the land in order to raise crops other than hay or grass on this land, * * * by a system of pumps."

The said engineer further testified that it would be necessary, in addition to the proposed gravity drainage, that the district should be subdivided, so that the land might be reclaimed from water to make it habitable and cultivable. He further testified:

"I consider they [gravity canals] will be of practical value in two ways: That they will assist in removing the excess water on the land, and will furthermore act as a nucleus for further developments, which will be contemplated in the shape of installing pumps and construction of levees. The system as outlined, according to the general practice, would be entirely inadequate. Ditches would be necessary to construct—ditches of considerable area, at least every mile, with small ditches between, probably as close as 300 feet apart. * * *
"Q. And without the pumps and these levees, the ditches that you speak of, the land with only the canals that you propose as shown on this map, would not be drained, would it, sufficient to raise a crop on it? A. No, sir."

He further testified that the Mermentau river overflowed the land in the district. And in conclusion he says:

"It seems to me that in this particular section of the country all crops are a gamble, more or less, and I don't know that his gamble will be any greater than at any other point."

The evidence is very clear to the effect that to drain the land of plaintiff of the sur-

plus water on it that it would have to be leveed, and that pumps would have to be used, and that, unless these things were done, the land would not be either habitable or cultivable.

Paragraph 3 of article 281 embraces the drainage system which may be successfully used in the district of the defendant; and it follows that the drainage authorities therein may not levy forced contributions upon the land of that district, except on petition of the property holders, as is provided for in said paragraph 3; and, as no such petition was made in the defendant district, the tax levied and sought to be collected cannot be enforced. The ordinance levying it is null and void.

It may well be that a gravity drainage system might be adopted in certain districts of the state, and that the costs of such system would be small in comparison with that of other systems, as provided for in the law. And it may be that the gravity drainage might be used in connection with a system for drainage by levees and pumps. But, from the pleadings and evidence in this case gravity drainage is not feasible for draining the land in the defendant district of all of the surplus water thereon.

It may be, as argued by defendant, that drainage is a relative term, and that land may be said to be drained if water be removed therefrom, even though it be not all removed, and that it is practical to have gravity drainage of a tract of land down to a certain water level, even though thereafter it may be necessary to employ levees and pumps; but gravity drainage can hardly be considered as a system of drainage, as is provided for in the Constitution, unless it drains the land entirely, so that it may be cultivated, unless, it only forms part of another drainage system, such as by the use of levees and pumps which will render the land cultivable.

This view is sanctioned by the language contained in paragraph 2, where it refers to land "which is susceptible of gravity drainage." The land of the district involved in this suit cannot be said to be susceptible of gravity drainage, in the ordinary acceptation of such language, while it continues to be covered with water.

This view is strengthened by the provision in section 21, Act No. 317 of 1910, p. 552, which says that:

"Such acreage tax shall only be imposed upon such lands in the district as are especially benefited by the drainage."

Judgment affirmed.

O'NIELL, J., concurs in the decree only.