(70 South. 910)

No. 20832.

SHAW v. BOARD OF COM'RS OF BAYOU TERRE–AUX–BŒUFS DRAINAGE DIST.

(June 29, 1915. On Rehearing, Feb. 21, 1916.)

*(Syllabus by the Court.)*

1. DRAINS ⬥⟿91—DRAINAGE DISTRICT BONDS —VALIDITY—RIGHT TO ATTACK.

A constitutional provision, which declares "that no court shall have jurisdiction to entertain any contest wherein 'is questioned the validity of bonds issued by any of the political subdivisions of the state, where such bonds have not been declared invalid by judgment of the court of last resort in the state, and where more than 60 days have elapsed since the promulgation of the proceedings evidencing the issuance of such bonds,'" is to be construed strictly, and, so construed, does not divest the courts of jurisdiction of a pending suit in which a litigant, making no attack upon the validity of such bonds, seeks to prevent the sheriff from selling his property for a tax, thought by the sheriff to have been levied for, and pledged to, the payment of the bonds, but the levying and pledging of which, for that purpose, the litigant denies.

[Ed. Note.—For other cases, see Drains, Cent. Dig. §§ 53, 82, 102, 103; Dec. Dig. ⬥⟿91.]

2. PLEADING ⬥⟿36 — CONFLICTING ALLEGATIONS—EVIDENCE.

Conflicting pleadings are construed against the pleader; and where, in the same paper, a defendant denies and admits that plaintiff is the owner of property of which he alleges himself to be the owner, he should not be permitted to introduce evidence in support of his denial of that which he also admits.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 81–86; Dec. Dig. ⬥⟿36.]

3. DRAINS ⬥⟿71—DRAINAGE DISTRICTS—VALIDITY OF BONDS—RIGHT TO ATTACK—BENEFITS.

Where the Constitution authorizes a drainage board to levy a uniform acreage tax upon "all lands" situated in its district, and the tax is so levied, and bonds are issued and sold upon the basis of the levy, one who thereafter acquires land in the district has no standing to complain that the tax is invalid, on the ground that his property derives no benefit from the drainage, since the framers of a Constitution are not required to consider that view, though a Legislature may be. Moreover, it has frequently been held by this court that the creation of a drainage district is a legislative, and not a judicial, function, and that the courts will not readily substitute their judgments for the judgments of drainage commissioners, upon complaints that particular property is not benefited, or is not immediately or directly benefited, save in cases where fraud or gross oppression is alleged and proved.

[Ed. Note.—For other cases, see Drains, Cent. Dig. § 74; Dec. Dig. ⬥⟿71.]

4. DRAINS ⬥⟿66—POWERS—DEBTS OF SUBDIVISIONS—LEVY OF TAXES.

The state, through its Legislature, and a fortiori through the people, acting directly in their sovereign capacity, may compel its political subdivisions to pay debts legitimately contracted, and for that purpose to levy taxes upon the property within their jurisdictions.

[Ed. Note.—For other cases, see Drains, Cent. Dig. § 72; Dec. Dig. ⬥⟿66.]

*On Rehearing.*

5. CONSTITUTIONAL LAW ⬥⟿70—DRAINS ⬥⟿ 71 — LEGISLATIVE QUESTION—ASSESSMENT— "TAXING POWER."

"The courts are very generally agreed that the authority to require the property specially benefited to bear the expense of local improvements is a branch of the 'taxing power,' or included within it. * * * Whether the expense of making such improvements shall be paid out of the general treasury, or be assessed upon the abutting or other property specially benefited, and, if in the latter mode, whether the assessment shall be upon all property found to be benefited, or alone upon the abutters, according to frontage or according to the area of their lots, is, according to the present weight of authority, considered to be a question of legislative expediency."

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 129–132, 137; Dec. Dig. ⬥⟿70; Drains, Cent. Dig. § 74; Dec. Dig. ⬥⟿ 71.

For other definitions, see Words and Phrases, First and Second Series, Taxing Power.]

6. DRAINS ⬥⟿15 — DRAINAGE DISTRICTS— PROPERTY INCLUDED—CONFISCATION.

A drainage district has the special purpose of the improvement of particular property, and when it is so formed to include property which is not and cannot be benefited directly or indirectly, including it only that it may pay for the benefit to other property, there is an abuse of power and an act of confiscation.

[Ed. Note.—For other cases, see Drains, Cent. Dig. §§ 7–10; Dec. Dig. ⬥⟿15.]

7.· DRAINS ⬥⟞91 — DRAINAGE DISTRICTS—ILLEGAL ASSESSMENT—INJUNCTION.

And an injunction will issue to prevent the collection of taxes upon property thus illegally included in a drainage district.

[Ed. Note.—For other cases, see Drains, Cent. Dig. §§ 53, 82, 102, 103; Dec. Dig. ⬥⟞91.]

Monroe, C. J., and O'Niell, J., dissenting.

Appeal from Twenty-Ninth Judicial District Court, Parish of St. Bernard; R. Emmet Hingle, Judge.

Action by Daniel Shaw against the Board of Commissioners of the Bayou Terre-aux-Bœufs Drainage District. From judgment for defendant, plaintiff appeals. Reversed, and judgment for plaintiff.

Richardson & Soule and Oliver S. Livaudais, all of New Orleans, for appellant. Charles Payne Fenner, Paul A. Sompayrac, and H. L. Favrot, all of New Orleans, for intervener Dr. Paul Hill Saunders. Thos. E. Furlow, of New Orleans, for appellee. R. E. Milling, of New Orleans, amicus curiæ.

## Statement of the Case.·

MONROE, C. J. In June, 1913, plaintiff obtained a preliminary injunction, restraining the sheriff of St. Bernard parish from selling, for acreage taxes of 1911, 1912, and 1913, some 4,000 acres of land which he had acquired in that parish in July, 1911, alleging that he had offered to pay all the taxes claimed, save those levied by the board, here made defendant, for drainage purposes, and that his offer had been refused; and further alleging as follows:

"That all of the * * * lands lie outside of the levee system which the board * * * are building, or proposes to build, for the purpose of draining the lands within the district established by said board, and * * * will not receive any benefit therefrom; * * * that his said lands have been erroneously assessed for the said drainage tax, and the assessments * * * for the years 1911, 1912, and 1913 should be canceled, * * * for the reason that in accordance with section 21 of Act 317 of 1910, and section 2 of Act No. 219 of 1912, such acreage tax shall only be imposed upon such lands * * * as are especially benefited by the drainage, and his said * * * lands will not be benefited by the drainage contemplated by said board."

He prayed for citation upon the sheriff, the board, and the assessor, for the perpetuation of the preliminary injunction, and for judgment ordering the cancellation of the assessment. The board, by way of exception, alleges that plaintiff's lands were adjudicated to the state, in 1912, for taxes of 1911, and have not been redeemed, and hence that plaintiff is without interest to prosecute the suit; but, in the next paragraph (with which the answer begins), it "acknowledges that the said Daniel Shaw is the owner of the lands."

Further answering, the board sets up certain defenses, in which it is joined by Dr. Paul Hill Saunders, who has intervened as the owner of three bonds, of $1,000 each, issued by the board, and the proceeds of which it expended in the work of drainage undertaken by it. Those defenses will be more particularly referred to and considered hereafter.

The facts, disclosed by the evidence and admissions, are as follows:

In July, 1908, the Bayou Terre-aux-Bœufs drainage district was established, legally and politically, and delimited, territorially, and the board of commissioners, here made defendant, was organized and assumed jurisdiction of its affairs and of all the lands within its boundaries. In 1909, in order to obtain the money required for the drainage of the district, in accordance with its views, and with the views of a majority in number and amount of the property tax payers, qualified to vote, who conferred the authority at special elections, held for that purpose, the board issued the bonds of the district, to the amounts of $60,000 and $165,000, respectively, having 40 years to run and secured by tax levies of 3 and 6 cents per acre upon all the lands in the district, which bonds were sold upon the market at par, and the

proceeds expended in the work of drainage.

The legality of the first bond issue, of $60,000, having been called in question, was affirmed by this court in a decision handed down in June, 1909, in the case of Board v. Baker, 124 La. 216, 50 South. 16, and it was more than a year afterwards, and after the subsequent issue of $165,000 of bonds and the levy of the 6-cent acreage tax for their payment, that plaintiff acquired his lands. In August, 1912, the property tax payers authorized another issue of bonds, to the amount of $500,000, and the levy of a tax of 16 cents per acre, upon all the land in the district for their payment, and $250,000 of the bonds are shown to have been sold upon the market. It has also been shown that the lands of the plaintiff were, and are, within the boundaries of the drainage district in question.

Plaintiff's counsel offered testimony to the effect that:

His lands "lie outside of the levee system which the board of commissioners of the Bayou Terre-aux-Bœufs drainage district of St. Bernard parish are building or propose to build, for the purpose of draining the lands within the district established by said board, and that the lands will not receive any benefit therefrom."

And the following objection was interposed by counsel conducting the defense, and sustained by the court, to wit:

"I object to this kind of evidence going in on the question of benefits to be derived, and also object on the ground that the attack started is, in effect, an attack upon the validity of the taxes levied by the Bayou Terre-aux-Bœufs drainage district, and is also, in effect, an attack upon the validity of the bonds issued by the Bayou Terre-aux-Bœufs drainage district, which are to be paid with the proceeds of those taxes; and my objection is, further, that the said bonds were issued and sold, as set forth in the petition, prior to the constitutional amendment, adopted in November, 1912, that was a sweeping validation of bonds previously issued, or previously authorized by vote of the people, not contested on any ground of fraud, and, there being no issue of fraud raised in this case, no evidence is admissible until it is shown that these bonds do not come within the validating effects of article 281 of the Constitution."

Thereafter, counsel conducting the defense placed of record the following admission, concerning the relation of the drainage work to plaintiff's lands, to wit:

"I will admit that your property is located beyond the canal lines, as presently constructed by the Bayou Terre-aux-Bœufs drainage district, in its work, so far as it has been entailed" (sic).

Counsel for plaintiff, when referring to the work done and contemplated by the defendant board, persistently used the words "levee system," to which counsel for the defense objected, and insisted that the term "canal," or "drainage," system should be employed. The evidence is uncontradicted to the effect that the work done has consisted of digging canals, and that levees have been constructed by the deposit of the earth excavated in so doing.

### Opinion.

### On Motion to Dismiss the Appeal.

[1] The intervener moves to dismiss the appeal, upon the ground that this court is without jurisdiction to entertain it, by reason of an amendment to the Constitution, proposed by Act 192 of 1914, and adopted in November, 1914, which reads, in part, as follows:

"That all bonds heretofore issued, under and by virtue of this article 281 of the Constitution, by the governing authority of any subdivision, which have heretofore not been declared invalid by a judgment of a court of last resort in the state of Louisiana, and more than sixty days have elapsed since the promulgation of the proceedings evidencing the issuing of said bonds, are hereby recognized and declared to be valid and existing bonds and obligations of the district or subdivision issuing the same, and no court shall have jurisdiction to entertain any contest wherein their validity or constitutionality is questioned."

This suit had been pending in the district court for some weeks before Act 192 of 1914 was passed, and the appeal had been lodged in this court for several months before the amendment proposed by that act was adopted; nevertheless, if the amendment, so adopt-

ed by the sovereign people of the state, had declared that no existing court in this state should thereafter have jurisdiction of any cause, civil or criminal, it would be difficult to find the authority under which any one could exercise the functions of a judge of a state court. But, in such case, the amendment would not be so interpreted as to deprive a litigant of all remedy for the protection of life, liberty, and property, if it could be avoided; and so, in this case, we will not assume that it was the purpose of the amendment to deprive any citizen of all remedy against the alleged unlawful deprivation of his property, which the law afforded him, and which he had invoked when the amendment was adopted, and to leave him altogether without remedy. The language does not so read. It specifies "any contest wherein their legality or constitutionality" (meaning the legality or constitutionality of certain bonds issued under the authority of article 281 of the Constitution) "is questioned." But the plaintiff herein has not questioned the legality or constitutionality of the intervener's bonds. He was engaged, when the intervention was filed, in trying to prevent the sheriff from selling his lands, for a tax which, he alleges, was erroneously and unlawfully imposed upon it, and, being erroneously and unlawfully imposed, was erroneously and unlawfully assumed to have been pledged for the payment of those bonds. A contract represented by a bond or note, however, is one thing, and the pledge, whereby the bond or note is said to be secured, is another, and an attack upon the pledge does not, of necessity, involve an attack upon the main contract. The motion to dismiss is therefore overruled.

### On the Exception.

[2] The allegation in the exception is that plaintiff is without interest, because the property claimed by him had been sold to the state for taxes and had not been redeemed, and, in support of that allegation, defendant offered a sheriff's deed, showing the alleged sale, which was admitted over plaintiff's objection that defendant, in the same pleading with the exception (as, also, the intervener), had admitted that plaintiff owned the property. We are of opinion that the objection should have been sustained. Conflicting allegations in pleadings are construed against the pleader.

### On the Merits.

[3, 4] In 1909, when a majority, in number and value, of the property tax payers of the district who were qualified to vote, authorized the bond issues of $60,000 and $165,000, respectively, and the 3 and 6 cent acreage taxes, and when the bonds were issued and the taxes levied, the constitutional provision by which the matter was governed was that found in the amendment proposed by Act 122 of 1906, and thereafter adopted, which confers upon drainage districts the power to levy acreage taxes and issue bonds in the following terms, to wit:

"Shall * * * have the further power and authority to levy and assess annual contributions or acreage taxes, for the purpose of providing and maintaining drainage systems, on all lands situated in such districts, not exceeding twenty-five (25) cents per acre for a period not to exceed forty (40) years, when authorized to do so by a vote of a majority in number and amount of the property tax payers of said districts, qualified to vote as electors under the laws of this state, voting at an election held for that purpose, as provided in the first part of this article, and said drainage districts, through the boards of commissioners thereof, may incur indebtedness and issue negotiable bonds therefor payable in principal and interest, out of, and not to exceed in principal and interest, the aggregate amount to be raised by said annual contributions during the period for which the same are levied."

It is not here pretended that the foregoing provisions of the Constitution, or those of the enabling statutes, in force in 1909, were not complied with, either in the creation and delimitation of the Bayou Terre-aux-Bœufs drainage district, or in the issuance, by the board of commissioners of that district, of the

bonds and the levying of the taxes above mentioned; and though, as held by this court, the tax levy was required to be made annually in order to meet the changing conditions, resulting from the reduction of the debt, by the payment, from time to time, of the bonds, the action of the property tax payers in authorizing, and of the board in issuing, the whole amount of the bonds and declaring the whole amount òf the taxes pledged for their payment, operated to impose upon every acre of land in the district a liability for its proportion of that debt; and the plaintiff herein, thereafter, acquired his land subject to that condition. If it be said that he has at least the right that his author in title, who owned the lands when the tax was voted and levied, would have had, to contest the validity of the tax, upon the ground that the lands would receive no benefit from the drainage and had been "erroneously assessed for said tax, * * * for the reason that, in accordance with section 21 of Act 317 of 1910 and section 2, of Act 219 of 1912, such acreage tax shall only be imposed upon such lands in the district as are especially benefited by the drainage," the answer appears to be that the taxes for the payment of the bond issues of $60,000 and $165,-000, respectively, were levied and pledged before the acts of 1910 and 1912 were passed, and that they, as also those constituting the authorized bond issue of $500,000, were levied under and in accordance with the requirements of article 281 of the Constitution, amended as proposed by Act 122 of 1906, and authorizing such levy, within the limit of 25 cents per acre, "upon all land situated within such districts."

In the case of City of Lafayette v. Bank of Lafayette, recently decided (137 La. 92, 68 South. 238), the question presented was whether the city of Lafayette could lawfully impose a tax upon the property within its corporate limits, for the building and maintenance of public roads outside of those limits,

and this court had occasion to distinguish between the power of the Legislature, in the matter of taxation, and the power of the sovereign, for in that case, as in this, the power to levy the tax came directly from the Constitution, and not from the Legislature.

The opinion quotes Judge Dillon (inter alia) as follows:

"Taxation implies, as we have seen, an imposition for a public use; and it also implies that the imposition shall be upon some system of apportionment, so as to secure uniformity among those who are, or ought to be, subject to the particular tax or assessment. * * * But where the imposition is properly a tax, and no specific or express constitutional limitation exists, the power of the Legislature is supreme and without any theoretical bounds. 'If the right to impose a tax exists,' says the Supreme Court of the United States, 'it is a right which, in its nature, acknowledges no limit'; and the reason is that the needs of the public or of the government, ordinarily, have no bounds set to them." Dillon, Mun. Corp. (4th Ed.) vol. 2, p. 896, § 737.

We may say here, as was said (quoting in part) in the case thus cited:

"In the instant case, there is no question, either of 'mere legislative authority,' or of private interest involved, for the grant of authority comes direct from the Constitution."

The work to which the taxes are to be devoted is a public work; and, whether they would fall equally upon all persons and property affected, in proportion to the benefit received, was a matter with reference to which the power of those who adopted the Constitutional amendment of 1906 (that is to say, the sovereign people of the state) was supreme. Again, it has several times been held by this court that the creation of a drainage district and the distribution of the burden of taxation for its drainage involves the exercise of legislative power, and that a court will not undertake to substitute its judgment for that of the political body by which the power has been exercised, merely because of a difference of opinion as to the policy or expediency of its action, or because all persons affected do not receive the same measure of benefit.

"Judicial judgment," said the court, in one case, "is not to be substituted, lightly, for legislative judgment. The benefits contemplated need not be direct nor immediate." De Gravelle v. Iberia and St. Mary Drainage District, 104 La. 703, 29 South. 302; Bernard v. Portage Drainage District, 130 La. 640, 58 South. 493; Myles Salt Co. v. Board of Commissioners, 134 La. 903, 64 South. 825; George et al. v. Sheriff, 45 La. Ann. 1232, 14 South. 137; Hill et al. v. Sheriff, 46 La. Ann. 1566, 16 South. 475; Cooley on Taxation, pp. 428, 429.

Still another recognized rule of law which is to be taken into consideration is that the state, through its Legislature, and, a fortiori, through the people, acting directly in their sovereign capacity, may compel its political subdivisions to pay debts legitimately contracted, and, for that purpose, to levy taxes upon the property within their respective jurisdictions. Forman v. Sewerage & Water Board, 135 La. 1037, 66 South. 351, L. R. A. 1915D, 927 (quoting McQuillin on Municipal Corporations, vol. 1, p. 536, § 237). And, since the bond issues of $60,000 and $165,000 were made, the people of the state have, by constitutional amendments, twice, in effect, affirmed their validity, and, once, in specific terms, declared that a tax for the payment of such bonds shall be levied. Thus, the amendment proposed by Joint Resolution 132, of 1912, and adopted in November of that year, provides that:

"When bonds of any subdivisions have been heretofore issued for any of the purposes specified in paragraph 1 of this article" (which includes drainage), "and issue has been authorized by the vote of a majority in number and amount of the property tax payers qualified to vote under the Constitution and laws of this state who voted upon the proposition to issue such bonds at an election held for that purpose, and where such bonds have been issued and sold by such subdivision for not less than the par value thereof, the said bonds  *  *  *  are hereby validated, ratified and confirmed; provided, that such bonds did not, at the time of their issue, exceed ten per centum of the assessed valuation of the property in such subdivision; and such bonds, hereby ratified, approved and confirmed, shall be deemed to be the valid and incontestable obligations of such subdivision, and a tax for the payment of the principal and interest thereof and to create a sinking fund for their redemption shall be levied and collected in the manner and within the limits prescribed by said paragraph 1 of this article. This entire article is to be considered a full grant of power to the subdivisions of the state, as set forth herein."

The issue of $500,000 of bonds was authorized by the taxpayers, at an election held for that purpose on August 26, 1912, and it is alleged by plaintiff that the authority to impose the tax for their payment was derived from the acts of 1910 and 1912, to which we have referred; but we do not so understand it. The tax was authorized before the act of 1912 became a law, in the parish of St. Bernard, and the scheme of taxation contemplated by section 21 of Act 317 of 1910 being entirely different from that contemplated by the constitutional amendment of 1906, in accordance with which the tax here in question was levied. The scheme proposed by the statute must have been intended as an alternative to that provided for by the Constitution, and was necessarily optional, and not compulsory, since the statute could not have been intended to repeal the Constitution.

The case of Marceaux v. Cameron Drainage District No. 3, 136 La. 913, 67 South. 956, is based upon provisions of the constitutional amendment of 1914 (other than that heretofore referred to) which contemplate the establishment of systems of "gravity" drainage, make it the duty of drainage commissioners to pursue a particular method in providing for both drainage and reclamation of lands which must be leveed and pumped, and authorize a maximum acreage tax of $3.50 per acre.

It is evident that the change in the law was made because it was thought that the rights conferred, and obligations imposed, by the new constitutional enactment, had not been conferred and imposed by the old, which was true. And it is equally evident that the change was by constitutional amendment, because it was thought, in view of the existing provisions of the Constitution, that the Gen-

eral Assembly was powerless to make it, which was also true. But the amendment in question does not affect, or purport to affect, rights acquired under the Constitution, as it stood prior to the adoption of the amendment, and hence the decision in the Marceaux Case has no bearing in this case.

Our conclusion, then, as relates to the tax of 16 cents per acre, levied for the payment of the bond issue of $500,000, as also the taxes of 3 and 6 cents per acre levied for the other bonds, is that they were validly levied, under the amendment proposed by Act 122 of 1906, upon "all lands situated in the Bayou Terre-aux-Bœufs drainage district," and that plaintiff has no standing to question their validity upon the grounds alleged in his petition.

The judgment appealed from is therefore affirmed.

### On Rehearing.

SOMMERVILLE, J. The pleadings have been fully stated in the original opinion of the court.

The plaintiff, alleging himself to be the owner of certain described lands in St. Bernard parish, and embraced within the Bayou Terre-aux-Bœufs drainage district, alleges that said lands were assessed for taxation during the years 1911, 1912, and 1913, that he tendered to the tax collector the proper amount of taxes due thereon, and that it was refused, for the reason that he (the plaintiff) declined to pay the drainage taxes, or forced contributions, of 3 cents, 6 cents, and 16 cents, amounting to 25 cents imposed upon each acre of the lands in question, for the years mentioned. A preliminary injunction was issued, restraining the tax collector and others from proceeding with the seizure and sale of plaintiff's property. He asks that said injunction be perpetuated, and that:

"There be judgment in favor of your petitioner and against defendant, declaring the assessments of said property for drainage taxes (or forced contributions), above referred to, to be null, void,

138 La.—30

and of no effect, and ordering the cancellation of the same."

In his petition, plaintiff does not directly attack the formation of the Bayou Terre-aux-Bœufs drainage district, or the organization of the board of commissioners for that district, or the system of drainage adopted by the board, or the amount of the forced contributions imposed by the board, except as to his property, or the election by which drainage bonds were issued by the board, or the issue of the bonds.

The defendant sets up the regularity and legality of all the preceding matters; but, as they have not been called in question, they do not form issues in the case.

Defendant admitted that plaintiff was the owner of the property in question; but it now moves to dismiss the appeal by the plaintiff on the ground that he (plaintiff) has ceased to be the owner of the land, because of a sale thereof made to the state for delinquent taxes for the year 1911, and the subsequent transfer of the title to said lands by the state to the board of commissioners of the Lake Borne levee district, said transfer having been made by the state to the board of commissioners since the appeal was filed in this court.

The motion comes too late to be considered. Besides, defendant has admitted that plaintiff was the owner of the lands; and this proceeding is to enjoin the tax collector from selling the lands for taxes for the year 1911, as well as the two succeeding years. The motion is denied.

Respondent, further answering, denied that the lands of plaintiff were outside of any levee system which the board was building, or proposed to build, for the purpose of draining the lands within the district; and it specifically denied that the lands would receive no benefit from the system of drainage provided for them; but averred that the lands are within the limits of the drain-

nge district, and subject to all drainage taxes voted by the property tax payers therein. Defendants further denied that drainage taxes had been imposed upon plaintiff's lands for the purpose of reclaiming them by artificial means, as by leveeing and pumping, as set forth in paragraph 3 of article 281 of the Constitution of 1898, as amended by Joint Resolution No. 132, of 1912, p. 164. Defendant further represented that:

It has "actively progressed with the work of drainage with the opening of natural outlets in said district, and the principal work that has been done in the drainage district has been the opening of the natural outlets in the said drainage district, notably the clearing out and dredging of Bayou Terre-aux-Bœufs, Bayou la Loutre, and the digging of additional canals to make, as far as it lies within the power of the board, a continuous and comprehensive system of drainage that would be resultant in the greatest good to the greatest number of property holders in the district."

Defendant alleged that:

The drainage district "is composed partly of lands that are high and subject to drainage by gravitation without the necessity of leveeing and pumping, and largely of lands that are low and marshy and that are unfit for cultivation, unless subjected to reclamation by leveeing and pumping; but that the great bulk, almost the entire, acreage of low marshy land, owes a servitude of drainage to the higher lands which are to be drained by gravitation; that in order, therefore, to create the comprehensive system of drainage necessary to take care of all the waters of the drainage district, it was essential and necessary to deepen, open, and clear the natural outlets and bayous that form the natural drains of the entire district, and to make such connections of canals with such natural outlets as would at least place natural drainage in reach of the large bulk of the property in the drainage district, to place it in such reach, at least, as would give every reclamation unit formed in that district an outfall in the drainage system of the district." That the board "do not propose and do not contemplate, with the taxes hereinabove referred to, to reclaim by leveeing and pumping any portion of the lands included within the limits of the Bayou Terre-aux-Bœufs drainage district, but simply propose a comprehensive scheme of general drainage that will give outlet for all the waters in Bayou Terre-aux-Bœufs drainage district. That subsequent to all these proceedings there have been created in said Bayou Terre-aux-Bœufs drainage district three subdrainage districts, which subdrainage districts are making use of the general work for general drainage inaugurated by your respond-

ents herein, and which subdrainage districts have, by petition of two-thirds of the number of acres in the subdrainage districts affected, asked for bond issues to accomplish the reclamation of leveeing and pumping of the particular acreage within the limits of said subdrainage district, but that petitioner's property is in no wise included in any of the subdrainage districts formed, and is in no wise affected by the taxes levied for the benefit of such particular subdrainage districts, and therefore is not concerned or interested in the development of said drainage districts or in the levy of taxes inaugurated therein.

"Your respondent avers, however, that petitioner herein had received an enormous benefit, and is receiving an enormous benefit, from the general drainage taxes levied in the Bayou Terre-aux-Bœufs drainage district, for the reason that there has been an enormous enhancement in the valuation of properties in the said district since the work of general drainage has been begun, and since the active dredging of the natural outlets of said drainage district have been inaugurated.

"Respondent further avers that petitioner's lands have and will enhance in value as a result of the work accomplished and to be done, and will be more valuable if he does with his lands what other property owners are doing with theirs, i. e., to have them incorporated in a subdrainage district and to have them leveed and pumped by artificial means to accomplish their complete reclamation. * * * *"

Defendant alleges that:

The proceeds from the sale of the bonds have "been paid out for actual work done and labor performed in the construction of canals and in the opening of the natural outlets as shown in this answer, located within the limits of the said Bayou Terre-aux-Bœufs drainage district, all of which was necessary and is necessary to accomplish a comprehensive system of drainage in said district, and to allow the successive formation of various subdrainage districts, or reclamation units, in the territory over which your respondent has jurisdiction."

The answer and the testimony in the record show that the lands of plaintiff are low and marshy, and covered in part by the waters of the Gulf of Mexico; and that they have not been benefited by the drainage work done by the defendant board, and, according to the answer, it is not contemplated that they will be drained of the water which appears to be standing on and over them; and that the only means for draining these lands would be for the plaintiff to put them in a subdrainage district, and levee and

pump them, and to pay an additional tax imposed for that purpose, or method of drainage.

It is clear that plaintiff's lands have not been drained, are not to be drained, and cannot be drained under the present system of the defendant board; and that the lands belonging to other persons in the district are being drained by natural outlets, or by gravitation, the costs of which are paid and to be paid, in part, out of the forced contributions imposed upon plaintiff's lands, the collection of which is enjoined in this suit.

The only benefit alleged to have been derived by plaintiff from the drainage system adopted by defendant in the district in which his lands are located is that they have been enhanced in value with the other property in the district; and that they will be more valuable if he causes them to be incorporated in a subdrainage district, and will tax himself for the cost of having them leveed and pumped by artificial means "to accomplish their complete reclamation." But such benefit is not a benefit to the lands, unless and until plaintiff taxes himself for the cost of leveeing and pumping them. This latter cost is not to be paid from the forced contributions sought to be collected at this time from this plaintiff, and the lands are not being benefited in any manner whatever by the drainage of other portions of the district. Plaintiff cannot be compelled to pay for the draining of other lands in the district in which his property has been illegally and arbitrarily included, and when they are not being benefited directly or indirectly by drainage. If that were done, it would be the taking of plaintiff's property without due process of law.

Plaintiff's lands are largely covered by water now. They are to receive more water upon them, if that is possible, through the system of drainage adopted by defendant; that is, through natural canals and outlets, which have been cleared and enlarged, and which convey the water from other lands in the district on to plaintiff's lands. Defendants say that the low marshy lands of plaintiff and others "owe a servitude of drainage to the higher lands which are to be drained by gravitation." This may be true; but such a servitude does not drain plaintiff's lands, and plaintiff cannot be compelled to pay for the exercise of that servitude on his lands by others. The lands which are drained must pay the cost of draining them. No act of the board could be more arbitrary, if drainage alone be regarded, than that of imposing a tax upon the lands of plaintiff under such circumstances.

It is clear that plaintiff's property was included in the drainage district not in the exercise of "legal legislative discretion," not because the system of drainage would inure to the benefit of the property, even indirectly, but with the purpose of deriving revenues so as to grant a special benefit to other lands subject to be improved by drainage, without any benefit to plaintiff or his property whatever, present or prospective.

The exaction of the taxes claimed by defendant from plaintiff is a flagrant abuse, and by reason of its arbitrary character is mere confiscation of the latter's property, and it cannot be maintained.

In disposing of the case of Myles Salt Co. v. Board of Commissioners of Iberia & St. Mary Drainage District et al., 239 U. S. 478, 36 Sup. Ct. 204, 60 L. Ed. ——, which case is similar in principle to the one under consideration, the Supreme Court of the United States say:

"It is to be remembered that a drainage district has the special purpose of the improvement of particular property, and when it is so formed to include property which is not and cannot be benefited directly or indirectly, including it only that it may pay for the benefit to other property, there is an abuse of power and an act of confiscation. Wagner v. Leser, supra. We are not dealing with motives alone, but as well with their resultant action; we are not dealing with

disputable grounds of discretion or disputable degrees of benefit, but with an exercise of power determined by considerations not of the improvement of plaintiff's property, but solely of the improvement of the property of others—power, therefore, arbitrarily exerted, imposing a burden without a compensating advantage of any kind."

[5-7] There is no doubt that the Legislature of a state may constitute drainage districts and define their boundaries, or delegate such authority to local or legislative bodies, as, in the present case, to the police juries of the parishes of the state, and that their action cannot be assailed under the fourteenth amendment, unless it is palpably arbitrary and a plain abuse. Plaintiff has not invoked the property clause of the Constitution of the United States in a direct way; but he has set up that his lands will not receive any benefit from the system of drainage being carried out by the defendant, and that under the law no acreage tax can be imposed upon his lands therefor, as they will not be specially benefited by drainage, and that the seizure and sale of his property for the drainage taxes, or forced contributions, claimed by the defendant, would cause him irreparable injury; and he asks that they be canceled, and the collection of them enjoined.

"The courts are very generally agreed that the authority to require the property specially benefited to bear the expense of local improvements is a branch of the taxing power, or included within it. * * * Whether the expense of making such improvements shall be paid out of the general treasury, or be assessed upon the abutting or other property specially benefited; and, in the latter mode, whether the assessment shall be upon all property found to be benefited, or alone upon the abutters, according to frontage or according to the area of their lots—is according to the present weight of authority considered to be a question of legislative expediency." Dillon, Mun. Corp. vol. 2 (4th Ed.) § 752.

In the case of Norwood v. Baker, 172 U. S. 269, 19 Sup. Ct. 187, 43 L. Ed. 443, where the property of an individual was taken for the purpose of making a street through his property, and the entire cost of opening the street, including not only the full amount paid for the strip condemned, but the costs and expenses for the condemnation proceedings, were thrown upon the abutting property of the person whose lands were condemned, there appeared to the court to be an abuse of the law, and not a valid exercise of the taxing power, and an injunction was sustained preventing the authorities from collecting that particular assessment; but it did not go so far as to prevent another special assessment of Mrs. Baker's property for her share in the costs of the contemplated improvement.

In the case of Houck v. Little River Drainage District, 239 U. S. 254, 36 Sup. Ct. 58, 60 L. Ed. ——, from the state of Missouri, the Supreme Court of the United States only recently held that the drainage tax therein imposed was legal. The right of the Legislature, unless restricted by the state Constitution, to create drainage districts directly, or to provide for their institution, and to authorize them to carry on systems of drainage, at the expense of those whose lands are to be drained, was therein recognized; and it was said that the action of the Legislature, or the body having the authority of the Legislature, could not be assailed under the fourteenth amendment, unless it is palpably arbitrary and a plain abuse.

And in the case of Wagner v. Leser, 239 U. S. 207, 36 Sup. Ct. 66, 60 L. Ed. ——, also recently decided, the same court repeat:

"This court has frequently affirmed that the general taxing systems of the state are not to be presumed lacking in due process of law because of inequalities or objections, as long as arbitrary action is avoided. * * *

"We do not understand this to mean that there may not be cases of such flagrant abuse of legislative power as would warrant the intervention of a court of equity to protect the constitutional rights of landowners, because of arbitrary and wholly unwarranted legislative action. The constitutional protection against deprivation of property without due process of law would certainly be available to persons arbitrarily deprived of their private rights by such state action, whether under the guise of legislative authority or otherwise."

These principles are recognized and stated in the cases of Dubose v. Levee Com'rs, 11 La. Ann. 167, and Cross v. Police Jury, 7 Rob. 121.

And in the recent case of Myles Salt Co. v. Board of Commissioners, before referred to, the Supreme Court of the United States refer to the two cases recently decided by that court in the following language:

"The case therefore is within the limitation of the power of the state as laid down in Houck v. Little River Drainage District et al., supra, which cites Norwood v. Baker, 172 U. S. 269 [19 Sup. Ct. 187, 43 L. Ed. 443], and retains its principles. It has not the features which determined French v. Barber Asphalt Co., 181 U. S. 324 [21 Sup. Ct. 625, 45 L. Ed. 879], and the cases which have followed that case, and Wagner v. Leser, decided coincidently with Houck v. Drainage District, and cited in the latter."

And the court held that the inclusion, in a drainage district, of Weeks Island, the property of the plaintiff in that suit, being an island rising 175 feet or more out of the marshes and bayous surrounding it, and which could not be drained by the system of drainage inaugurated in that district, and which island needed no drainage whatever, was a usurpation by the defendant board, and an effort to take plaintiff's property without due process of law.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed; and that there now be judgment in favor of the plaintiff, and against defendants, decreeing the acreage taxes or forced contributions of 25 cents per acre on plaintiff's property described in the petition in this case, for the years 1911, 1912, and 1913, to be null, void, and of no effect; and that the same be canceled; and that the preliminary injunction issued herein be perpetuated, in so far as said assessments and forced contributions are concerned. It is further ordered that the preliminary injunction be dissolved and set aside as to other taxes due on plaintiff's property. Costs to be paid by defendant and appellee.

O'NIELL, J., dissents, being of the opinion the case should be remanded to the trial court.

MONROE, C. J., is of the same opinion.