182 So. 719

DUSENBURY v. BOARD OF COM'RS FOR ST. TAMMANY DRAINAGE DIST. NO. 2 et al.

No. 34815.

June 27, 1938.

Arthur J. Finney, of Covington, for appellants.

A. Giffen Levy, of New Orleans, for appellee.

PONDER, Justice.

This is an appeal from a judgment in favor of the plaintiff setting aside and annulling a tax sale and restraining the de--

fendants from assessing, levying or collecting taxes on the property of the plaintiff involved in this suit.

We have carefully reviewed the record, the contentions raised, the authorities cited and the reasons for judgment handed down by the lower court. In view of the fact that the written reasons for judgment handed down by the lower court have correctly stated all of the facts and properly disposed of the issues raised in this case, we have decided to adopt them and make it our opinion.

"Reasons for Ruling on Exceptions.

"This suit is brought by Helena Eldred Dusenbury against the Board of Commissioners for St. Tammany Drainage District No. 2, seeking to annul the sale of petitioners's property, which sale was made by the Sheriff and Tax Collector of St. Tammany Parish on December 28, 1935, and the property was adjudicated to the Board of Commissioners for St. Tammany Drainage District No. 2 by a tax sale for drainage taxes supposedly due to St. Tammany Drainage District No. 2 for the years 1932, 1933 and 1934.

"Plaintiff described her property in the petition and alleges that it is inside of the Levy District No. 2, but without the Levy lines and between the said levy lines and the shores of Lake Pontchartrain. She further sets out in her petition that her property received no benefits whatever from reclamation works in this Levy District and that the Board of Appraisers for said Levy District assessed no benefits against her property and that the Court which homologated the assessments of the Board of Appraisers assessed no benefits against her property. She also alleges that no total taxes were ever levied against her property or that any benefit as a result of the formation of said Levy District ever accrued to her property.

"To this petition, the defendant, Board of Commissioners for St. Tammany Drainage District No. 2, has filed four exceptions, namely:

"1. Plea of estoppel.

"2. Plea of prescription of sixty days under Act No. 85 of 1921, Ex.Sess.

"3. Plea of prescription of one year under Act No. 85 of 1921, Ex.Sess.

"4. Exception of no cause or right of action.

"Since Act No. 85 of the Louisiana Legislature of 1921, Ex.Sess., is the last expression of the Legislature, of this State relative to the formation of Drainage Districts, a proper interpretation of that Act is necessarily involved in this suit for the purpose of the consideration of the above enumerated exceptions herein filed. Accordingly, the Court will now consider the first plea filed by the defendant; that of estoppel.

"The basis of the plea of estoppel is that this plaintiff did not allege that she objected to the report of the appraisers or the suit filed for the homologation of the plan of reclamation, as provided in Sections 24, 25, 26 and 27 of Act No. 85 of the Legislature of 1921, Ex.Sess. Section 24 of said Act merely provides the qualifications of the Board of Appraisers. Under Section 25 of said Act, the duties of the Appraisers are given. It will be noted under Section

25 that the Board of Appraisers assess the amount of benefits and the amount of damages, if any, that will accrue to each forty acre tract as shown by the engineer's maps or plan for reclamation. After the Board of Appraisers have assessed the benefits to property within the District, Section 25 then declares that they shall prepare a report of their findings, detailing the manner in which said report shall be made and that they shall file this report with the Secretary of the Board of Commissioners of the Drainage District.

"Section 26 provides that, upon the filing of the report of the Board of Appraisers with the Board of Commissioners, the latter Board shall file a petition in the District Court annexing a copy of the report of the Board of Appraisers and a copy of the plan for reclamation and shall ask for the confirmation or modification of such report. This Section provides for notice to all property owners within the District by the Clerk of Court.

"Section 27 then provides for the method of trial of said suit by the Court and it further provides that the decree of the District Court shall be conclusive upon every person whomsoever of the legality in every respect of the report of the Board of Appraisers. Thus, counsel for defendants contends that, since no objection was filed to this report of the Board of Appraisers or the subsequent homologation of same by the District Court, she is now estopped.

"In truth and in fact, taking the allegations of the petition as true, which the Court must do for the purpose of these exceptions, there was nothing for this plaintiff to object to at the time that the report of the Board of Appraisers was homologated by the District Court. As the Court understands the situation, she is not now questioning the legality of the report of the Board of Appraisers, but is contending that said report excluded her property from taxes as a result of the formation of said Drainage District for the reason that the Board of Appraisers assessed no benefits against her property. In other words, there was no necessity of her objecting to something that, as she contends, in no manner affected her property. The Court does not believe that the plea of estoppel is well taken, because the plaintiff is not now attempting to contest the legality of the report of the Board of Appraisers.

"Second: The plea of prescription of sixty days. Under Section 14 of Act No. 85 of 1921, Ex.Sess., it is provided that anyone who desires to contest the legality of any Drainage District shall do so by suit brought against said District in the Court of the domicile of same within sixty days after the second publication or the date of the last posting of the Ordinance creating such a District and that no right to bring any such contest shall exist after the lapse of sixty days.

"It is further provided in Section 14 that, if no contest is filed within said sixty days, the Drainage District shall be conclusively presumed to be regularly and legally created and all lands embraced within such District properly and legally included therein. Defendant then sets out that since this Drainage District was created in the year

1926 and that plaintiff only brought this action to annul the tax sale for drainage taxes in the year 1936, ten years later, the above sixty day prescription applies.

"The Court does not believe that this plea of prescription is applicable to a suit of this character. Nowhere in the petition is the legality of the formation or creation of the Drainage District sought to be set aside. This suit is simply to annul a tax sale of property which plaintiff claims was illegally taxed by the Board of Commissioners of said Drainage District. Consequently, the plea of sixty days prescription does not apply to a suit of this character.

"Third: The plea of prescription of one year. Under the provisions of Section 27 of Act No. 85 of 1921, Ex.Sess., it is provided that, when the Court has homologated the report of the Board of Appraisers, anyone who is aggrieved by said judgment may appeal therefrom, as in other cases. From the allegations of plaintiff's petition in this suit, there is nothing to show that she was aggrieved by the judgment homologating the report of the Board of Appraisers. She is, in this case, relying on the report of the Board of Appraisers to show that her property in said Drainage District was illegally sold by the Board of Commissioners of said District for the unpaid taxes for the years 1932, 1933 and 1934. Consequently, if she was not aggrieved by said judgment, it would have been absurd to have appealed from same. Therefore, prescription of one year likewise does not apply to a suit of this character.

"Fourth: Exception of no cause or right of action. It will be noted, as before pointed out, that, under Section 25 of Act No. 85 of 1921, Ex.Sess., the Board of Appraisers shall assess the benefits and the amount of damages, if any, that will accrue to each forty acre tract in a Drainage District, and that the said Board shall assess only such benefits as will be derived from the construction of the works and improvements set out in the plan for reclamation.

"Further, Section 30 of said Act No. 85 provides the method by which taxes shall be levied against the lands in the Drainage District. This Section provides that after the report of the Board of Appraisers has been homologated by the Court, the Board of Commissioners of said Drainage District shall levy a tax of such portion of said benefits on all lands, railroad and other property in the District to which benefits have been assessed as may be found necessary by the Board of Commissioners to pay the cost of the completion of the proposed works and improvements and carry out the object of said District. This Section further provides that the said tax shall be apportioned and levied on each tract of land in proportion to the benefits assessed and not in excess thereof. Therefore, this plaintiff is contending that the Board of Appraisers assessed no benefits against her property and that no total tax, as provided in Section 30, was ever levied against her property, and consequently, no annual tax could be levied for the years 1932, 1933 and 1934 as was sought to be done and as a result of which her property was sold.

"It seems to me that when the Board of Commissioners sought to levy a tax on this property, which was in the Drainage District, but upon which no benefits were assessed by the Board of Appraisers that it certainly acted in violation of the plain provisions of Section 30 of Act No. 85 of 1921, Ex.Sess., which provides, 'That the tax shall be apportioned and levied on each tract of land or other property in said District in proportion to the benefits assessed and not in excess thereof.'

"In support of the exception of no cause or right of action, the defendant has cited the case of Myles Salt Company v. Board of Commissioners, 134 La. 903, 64 So. 825, U. S. Supreme Court; Id., 239 U.S. 478, 36 S.Ct. 204, 60 L.Ed. 392, and Shaw v. Board, 138 La. 917, 70 So. 910, and U. S. Supreme Court, Saunders v. Shaw, 244 U.S. 317, 37 S.Ct. 638, 61 L.Ed. 1163. These cases are wholly inapplicable to the present suit, for those cases were under the Drainage Act of 1910, No. 317, in which a flat acreage tax was levied on all lands in the District. No opportunity was given the land owners to be heard or to protest or object to the levying of the tax but this power was arbitrarily delegated to a State agency and the Supreme Court in these decisions held that this was a denial of the land owners' constitutional rights. However, a discussion of these cases is unnecessary for the simple reason that defendant merely anticipated that plaintiff was relying on said decisions in order to set forth a right of action, which is not the case.

"The Missouri case, In re Mississippi & Fox River Drainage Dist., 270 Mo. 157, 192 S.W. 727, which was so strongly relied on by counsel for defendant in oral argument, is not decisive of the question involved in the present suit, for it is very plainly shown that benefits were assessed against the plaintiff's property in that decision, while in the case at bar, the allegation of the petition sets forth that no benefits were ever assessed by the Board of Appraisers. Consequently, this Court is of the opinion that since the petition alleges that the Board of Appraisers of this Levy District assessed no benefits against plaintiff's property and that the Court, in confirming the report of the Board of Appraisers, assessed no benefits against her property, and that no total tax, proportioned according to benefits, or otherwise, were ever levied, that the petition certainly sets forth a cause and a right of action.

"For the above and foregoing reasons, the plea of estoppel, the exception of prescription of sixty days, the exception of prescription of one year and the exception of no cause or right of action will be and the same are hereby overruled.

### "Reasons for Judgment

"This suit is brought by the plaintiff, Helena Eldred Dusenbury, against the Board of Commissioners for St. Tammany Parish Drainage District No. 2 and the Sheriff of St. Tammany Parish, seeking to annul the tax sale of plaintiff's property, which was made for the purported non-payment of the District Drainage tax against said property for the years 1932, 1933 and 1934. It is the contention of the plaintiff that even though her property lies within the said drainage district, it is wholly without the

levee lines of said district and being without said levee lines, the Board of Appraisers of the drainage district assessed no benefits against her property and, therefore, under the provisions of Act No. 85 of 1921, Ex. Sess., there could be no drainage tax legally levied against the property and, consequently, the sale of same for the unpaid taxes for the years above mentioned is illegal, null and void.

"Defendants contend that benefits were assessed against said property and that benefits have accrued to it due to the establishment of the drainage district and, therefore, the sale of said property for the unpaid drainage taxes was a legal and valid sale.

"There can be no question but what the property involved in this suit forms a part of St. Tammany Drainage District No. 2 of the Parish of St. Tammany, Louisiana. See defendant's Exhibit 1, which is the report of the Board of State Engineers, giving a description of the boundaries of St. Tammany Drainage District No. 2. Further, there can be no doubt but what the property involved in this suit is outside of the lake front protection levee line, or rather between said levee line and Lake Pontchartrain. See map marked for identification as Dusenbury 1, the testimony of Dusenbury, and the deed attached to the petition which shows the acquisition by Mrs. Dusenbury from the Allen Land Company, Inc., of said property.

"Since the drainage district herein was created under the provisions of Act No. 85 of 1921, Ex.Sess.; in order to determine whether or not the property involved in this suit could be legally sold for non-payment of drainage taxes, it is necessary to examine some of the pertinent provisions of said act. Section 25 of the act provides, among other things, that the Board of Appraisers of the Drainage District shall assess the amount of benefits and amount of damages, if any, that will accrue to each forty acre tract or other smaller sub-divisions of land as shown by the engineer's maps provided for in Section 21 of the act. The act then provides that the Court shall render a decree confirming the report of the Board of Appraisers and the Drainage District may levy taxes as provided in the act. Section 30 of the Act provides the total tax that might be levied and this section plainly provides that said tax can only be levied in proportion as benefits have been assessed to that tract of land by the Board of Appraisers. Section 33 provides for the annual taxes which might be levied and this is only a percentage of the total taxes, which are levied by the Secretary of the Board. Consequently, if benefits were assessed by the Board of Appraisers of Drainage District No. 2 to the property involved in this suit, the sale was a valid one, but if no benefits were assessed to the said property by the Board of Appraisers, then the sale of this plaintiff's property is null, void and of no effect.

"A. T. Dusenbury, the husband of plaintiff, was a consulting engineer who drew the map of St. Tammany Drainage District No. 2, which map was used by the Board of Appraisers of said district in assessing benefits against the property in the district. He has indicated with the letter 'X' on the map marked Dusenbury 1, the property involved

in this suit. He further testifies that this property is a portion of the governmental subdivision of Lot 1, Section 32, Township 9, South Range 14 E. The report of the Board of Appraisers which assessed benefits against the property in the drainage district was offered in evidence and marked for identification as Dusenbury 2. On page 7 of said report, benefits were assessed to the North Shore Realty Co., Inc., and Lot 1 of Section 32 in Township 9 South Range 14 E., containing 42.25 acres. It must be borne in mind that this assessment of benefits was made against this property by the Board of Appraisers as shown by the engineer's map for this is so stated on page one of said Board of Appraisers' report. Now turning to the map which the Board of Appraisers used in assessing benefits against the 42.25 acres in Lot 1 of Section 32, it can readily be seen that the 42.25 acres of land is all north of the protection levy line and that none of it is between the said levy line and the lake shore where the property involved in this suit is located.

"It might be well to point out that the governmental sub-division known as Lot 1, Section 32, Township 9 South Range 14 E, shows the acreage of said lot to be 50.92 acres. See testimony Page 6, A. T. Dusenbury. It will be further noted that in the drainage tax records marked for identification as Dusenbury 3 and 4, the description of the property assessed for drainage taxes is Lot 1 of Section 32 in Township 9, South Range 14 E. It will also be noted that in the Appraisers' report, marked Dusenbury 2, that this lot was assessed as Lot 1, Section 32, Township 9, South Range 14

E. but in this report the number of acres was given as 42.25 acres. Counsel for defendant seems to take the position that because the lot was described as Lot 1 of Section 32, that the whole of said lot, as per the governmental subdivision showing it to contain 50.92 acres, was assessed with benefits and therefore subject to the drainage tax. In this I cannot agree for the simple reason that the Board of Appraisers assessed the benefits in accordance with the engineer's map which shows that only 42.25 acres in Lot 1 of Section 32 were assessed with benefits. In other words, the assessment of benefits insofar as Lot 1, Section 32, was concerned was made in accordance with the contents of said lot as shown by the engineer's map of the drainage district and not in accordance with the governmental subdivision of Lot 1 of Section 32. It is singular to note that the difference between the 50.92 acres which is the governmental sub-division of Lot 1, Section 32, and the amount of acreage as shown by the map of the engineer of the drainage district, constitutes the amount of acreage of Lot 1, Section 32, which is between the levee line and the lake shore. The exhibits marked Dusenbury 3 and 4 are the drainage tax records which show on pages 7 and 6 respectively, the description as Lot 1 of Section 32 in Township 9, South Range 14 E. There is no acreage given, but the witness A. T. Dusenbury testified that in accordance with the amount of tax levied in each instance, that the acreage was 42.25 acres.

"Counsel for defendants points out in his brief that lot 22 Pont Lake Estates was subdivided one year after the formation of the

drainage district and was taken out of the original Lot 1 of Section 32, Township 9 South Range 14 E. He also points out that the land in controversy is a part of Lot 22 of Pont Lake Estates. He contends that the drainage tax was paid on Lot 22 of Pont Lake Estates of which this property in this suit, prior to its sale, formed a part. As a matter of fact, A. T. Dusenbury admitted on the stand that the drainage tax was assessed against Lot 22 of the Pont Lake Estates. Of course, the whole of Lot 22 of the Pont Lake Estates ran both inside and outside of the levy lines of the said drainage district. It seems to be counsel's contention that because the tax was once paid on. Lot 22 of the Pont Lake Estates, this plaintiff cannot now question the tax on the particular property which is involved in this suit. I do not know whether the tax was levied on the property inside the levy line or both inside and outside the levy line of Lot 22 of the Pont Lake Estates, but to my mind this could make no difference because even assuming that the tax authorities for said district had levied the tax on the whole of Lot 22 of the Pont Lake Estates and the said taxes had been paid by prior owners, it still would not follow that this plaintiff would be liable for the taxes on this particular property which at one time formed a part of Lot 22 of the Pont Lake Estates, simply because a prior vendor paid the tax. If the Board of Appraisers of the drainage district assessed no benefits against this property, then the mere fact that there was a later sub-division and the property was inadvertently and erroneously taxed could certainly form no basis for holding a subsequent owner liable for a tax on the property when the Board of Appraisers had assessed no benefits.

"Therefore, even though the property involved in this suit is within the boundary lines of said drainage district, but since no benefits were ever assessed against said property and consequently no tax could legally be levied against it, I am of the opinion that the sale of this property for the nonpayment of the drainage taxes for the years 1932, 1933 and 1934 was illegal, null and void, and, therefore, there will be judgment herein decreeing the pretended tax sale and adjudication of the property involved in this suit to be null, void and of no effect; there will be further judgment decreeing that the said sale be set aside and cancelled from the official records of St. Tammany Parish, Louisiana."

For the reasons assigned the judgment is affirmed at appellant's cost.

FOURNET, J., takes no part.